STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph G. GRIFFIN, Defendant-Appellant.†

Court of Appeals

*No. 84–021–CR. Submitted on briefs November 9, 1984.—Decided September 12, 1985.*
(Also reported in 376 N.W.2d 62.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Alan G. Habermehl* and *Kalal & Habermehl* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Barry M. Levenson,* assistant attorney general.

Before Gartzke, P.J., Dykman, J., and Bruce F. Beilfuss, Reserve Judge.

GARTZKE, P.J.   Joseph Griffin appeals from a judgment convicting him of possession of a firearm as a convicted felon. Sec. 941.29(2), Stats. Griffin was previously convicted of possession of heroin with intent to deliver, a felony, and was on probation for resisting arrest, disorderly conduct and obstructing an officer. Probation agents found a pistol in Griffin's apartment during a warrantless search. The trial court denied Griffin's motion to suppress the pistol as evidence.

Griffin contends that a warrant is constitutionally required to search a probationer's residence. Alternatively, he argues that even without a warrant requirement the search was unlawful because it was not based upon probable cause, or, at a minimum, a reasonable belief that contraband was present. The state asserts that because Griffin was on probation, the warrantless search in accordance with the rules of the Department of Health and Social Services was constitutional. We conclude that probation agents could lawfully search Griffin's apartment without a warrant on information from the

police that he had a gun in his apartment. We therefore affirm.

A probation supervisor testified at the suppression hearing that a detective in the Beloit police department telephoned him that the police had information that Griffin "may have had guns" in his apartment. The supervisor requested police protection for a search. Two or three hours later, the supervisor, a probation agent and three plainclothes police officers went to Griffin's apartment. When Griffin answered the door, they identified themselves and said they were going to search the residence. The police stayed in the living room with Griffin, his child and a woman living with him, while the supervisor and agent searched the apartment. After the supervisor returned to the living room, an officer pointed to a partially open table drawer, in which the supervisor found the pistol. The supervisor directed the officers to arrest Griffin.

The trial court found that the police were present to protect the probation agents at the latters' request and that a police search had not occurred. The court concluded that the warrantless search was reasonable because probation agents have a duty to determine whether a probationer is violating the law or the conditions of probation and because they relied on information from a detective that guns were or may be in Griffin's apartment. The trial court therefore refused to suppress the gun as evidence. Griffin was tried and convicted, and this appeal resulted.

### 1. *Warrantless Search by Probation Agents Permitted*

Griffin's motion to suppress is based on the fourth and fourteenth amendments to the United States Con-

stitution[1] and Wis. Const. art. I, sec. 11. The provisions of the fourth amendment to the United States Constitution and Wis. Const. art. I, sec. 11, prohibit unreasonable search and seizure and are almost identical. Evidence obtained in violation of either provision is generally inadmissible and must be suppressed.

The chief evil against which the fourth amendment is directed is the physical entry of the home. *Welsh v. Wisconsin,* — U.S. —, — (1984), 80 L. Ed. 2d 732, 742.

> And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. *See Johnson v. United States,* 333 U.S. 10, 13–14 (1948). It is not surprising, therefore, that the Court has recognized, as "a 'basic principle of Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. [573,] 586 [1980]. *See Coolidge v. New Hampshire,* 403 U.S. 443, 474–75 (1971) . . . .

*Welsh,* — U.S. at —, 80 L. Ed. 2d at 742 (footnote omitted).

Exceptions to the warrant requirement are "few in number and carefully delineated," *United States v. United States District Court,* 407 U.S. 297, 318 (1972), and have been "jealously and carefully drawn." *Jones v. United States,* 357 U.S. 493, 499 (1958). The exceptions recognized by the United States Supreme Court include search based on consent, search incident to a lawful arrest, a search in hot pursuit, exigent circumstances and seizure of evidence in plain view. *See*

---

[1] The provisions of the fourth amendment apply to the states through the Due Process Clause of the fourteenth amendment. *Mapp v. Ohio,* 367 U.S. 643, 655 (1961).

*Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (consent) ; *Michigan v. Long,* —— U.S. ——, ——, 77 L. Ed. 2d 1201, 1219 (1983) (limited search incident to lawful arrest) ; *Texas v. Brown,* 460 U.S. 730, 735–36 (1983) (hot pursuit) ; *New York v. Belton,* 453 U.S. 454, 457 (1981) (exigent circumstances) ; and *Washington v. Chrisman,* 455 U.S. 1, 5–6 (1982) (plain view). The state makes no claim that any of these exceptions applies to the facts before us.

The United States Supreme Court has not declared whether the status of a probationer or parolee is a basis for an additional exception to the warrant requirement.[2] This, of course, need not deter us from deciding whether the exception exists. *See State v. Prober,* 98 Wis. 2d 345, 360–61, 297 N.W.2d 1, 9 (1980) (medical emergency exception exists for warrantless search of home, notwithstanding lack of United States Supreme Court precedent). The existence and circumstances of such an exception have been the subject of considerable discussion at other levels. *See* 3 W. LaFave, *Search and Seizure* sec. 10.10, at 421 (1978). LaFave concludes:

> Although there is some authority to the effect that the Fourth Amendment rights of probationers and parolees are of precisely the same scope and dimension as those of the public at large, the weight of authority is to the contrary. . . . And while there is some disagreement as to whether a probationer's Fourth Amendment rights are diminished to the same extent and degree as those of a parolee, there is considerable authority supporting the proposition that probationers may lawfully be subjected to searches which, absent their probation status, would be deemed unlawful because of

---

[2] The cases indicate that probation and parole are the same or fail to distinguish between them for purposes of deciding whether a warrantless search of a dwelling is constitutional. *U.S. v. Consuelo-Gonzalez,* 521 F.2d 259, 265–66 (9th Cir. 1975) ; *State v. Malone,* 403 So. 2d 1234, 1238 (La. 1981); *Seim v. State,* 590 P.2d 1152, 1154 (Nev. 1979) ; *State v. Simms,* 516 P.2d 1088, 1091 (Ct. App. Wash. 1973).

the absence of probable cause or a search warrant or both.

*Id.* at 421–22 (footnotes omitted).

Most state and federal courts faced with the issue have held that probation or parole agents may conduct a warrantless search of the dwelling of a probationer or a parolee. *See, e.g., Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir.) (en banc), *cert. denied,* 423 U.S. 897 (1975); *Owens v. Kelley,* 681 F.2d 1362, 1368 (11th Cir. 1982); *Roman v. State,* 570 P.2d 1235, 1242 (Alaska 1977) (dicta); *State v. Montgomery,* 566 P.2d 1329, 1330 (Ariz. 1977); *People v. Mason,* 488 P.2d 630, 634 (Cal. 1971), *cert. denied,* 405 U.S. 1016 (1972); *People v. Anderson,* 536 P.2d 302, 305 (Colo. 1975); *Grubbs v. State,* 373 So. 2d 905, 907 (Fla. 1979) (use of evidence obtained limited to probation or parole revocation proceeding); *State v. Fields,* 686 P.2d 1379, 1389 (Hawaii 1984); *State v. Malone,* 403 So. 2d 1234, 1239 (La. 1981) (yard); *People v. Richards,* 256 N.W.2d 793, 795 (Ct. App. Mich. 1977); *State v. Earnest,* 293 N.W.2d 365, 369 (Minn. 1980) (evidence obtained used in a probation revocation proceeding); *State v. Morgan,* 295 N.W.2d 285, 289 (Neb. 1980); *Himmage v. State,* 496 P.2d 763, 766 (Nev. 1972); *People v. Huntley,* 371 N.E. 2d 794, 796 (N.Y. 1977); *State v. Perbix,* 331 N.W.2d 14, 21 (N.D. 1983); *State v. Culbertson,* 563 P.2d 1224, 1229 (Ct. App. Or. 1977) (dicta); *State v. Cummings,* 262 N.W.2d 56, 61 (S.D. 1978); *State v. Velasquez,* 672 P.2d 1254, 1260 (Utah 1983); *State v. Simms,* 516 P.2d 1088, 1094 (Ct. App. Wash. 1973).

Some courts permit police to make a warrantless search of a probationer's or parolee's dwelling. *See, e.g., Owens v. Kelley,* 681 F.2d at 1368; *State v. Montgomery,* 566 P.2d at 1331; *People v. Mason,* 488 P.2d at 631; *People v. Richards,* 256 N.W.2d at 795; *State v. Morgan,* 295 N.W.2d at 289; *Seim v. State,* 590 P.2d

1152, 1155 (Nev. 1979) (dicta); *State v. Perbix,* 331 N.W.2d at 21. *Contra, e.g., U.S. v. Consuelo-Gonzalez,* 521 F.2d 259, 266 (9th Cir. 1975) (en banc); *Roman v. State,* 570 P.2d at 1243; *People v. Anderson,* 536 P.2d at 305; *Grubbs v. State,* 373 So.2d at 909; *State v. Fields,* 686 P.2d at 1388; *State v. Velasquez,* 672 P.2d at 1262.

Under the minority view, no exception to the warrant requirement applies to probationers or parolees, and a warrantless search may not be made of such a person's dwelling unless one of the judicially recognized exceptions is met. *See, e.g., U.S. v. Rea,* 678 F.2d 382, 387–88 (2d Cir. 1982); *U.S. v. Bradley,* 571 F.2d 787, 789 (4th Cir. 1978); *State v. Cullison,* 173 N.W.2d 533, 537 (Iowa), *cert. denied,* 398 U.S. 938 (1970); *State v. Fogarty,* 610 P.2d 140, 144 (Mont. 1980); *Tamez v. State,* 534 S.W.2d 686, 692 (Ct. App. Tex. 1976).

The Wisconsin Supreme Court recognizes an exception to the warrant requirement which allows probation agents to search or seize a probationer, provided that the search or seizure itself is reasonable. *State v. Tarrell,* 74 Wis. 2d 647, 654–55, 247 N.W.2d 696, 701 (1976). The *Tarrell* court reasoned as follows:

If there is to be an exception to the requirements of the fourth amendment granting probation agents a limited right to search or seize a probationer without a warrant, the foundation for this exception lies in the nature of probation itself. Probation, like parole, "is an integral part of the criminal justice system and has as its object the rehabilitation of those convicted of crime and the protection of the state and community interest." *State ex rel. Niederer v. Cady,* 72 Wis. 2d 311, 322, 240 N.W.2d 626, 633 (1976). While probation is a privilege, not a matter of right, once it has been granted this conditional liberty can be forfeited only by breaching the conditions of probation. A sentencing judge may impose conditions which appear to be reasonable and appropriate. Sec. 973.09, Stats. A sentence of probation places the probationer "in the custody of the department" subject to the conditions of proba-

tion and rules and regulations of the Department of Health & Social Services. Sec. 973.10. All conditions, rules and regulations must be imposed with the dual goal of rehabilitation of the probationer and protection of the public interest. The imposition of these conditions, rules and regulations demonstrates that while a probationer has a conditional liberty, this liberty is neither as broad nor as free from limitations as that of persons who have not committed a crime. The expectations of privacy of a person on probation cannot be the same as the expectations of privacy of persons not on probation. It is only the reasonable expectations of privacy which the fourth amendment protects. Conditions of probation must at times limit the constitutional freedoms of the probationer. Necessary infringements on these freedoms are permissible as long as they are not overly broad and are reasonably related to the person's rehabilitation. By the very nature of probation, limitations on the liberty and privacy of probationers are imposed. These limitations are the bases for an exception to the warrant requirement of the fourth amendment.

*Id.* at 653–54, 247 N.W.2d at 700–701 (footnotes omitted).

*Tarrell* involved a personal search and seizure of a probationer, not the warrantless search of a probationer's dwelling. Special considerations attend a home which do not apply to a search or seizure conducted elsewhere. "Cases involving searches for articles of personal property make clear that, under the fourth amendment, one's home is entitled to special dignity and sanctity." *Laasch v. State,* 84 Wis. 2d 587, 594, 267 N.W.2d 278, 282 (1978). Sanctity attends the home. *Welsh v. Wisconsin,* —— U.S. ——, —— (1984), 80 L. Ed. 2d at 743; *Payton v. New York,* 445 U.S. at 588–89. *Tarrell* is not authority for the proposition that probation agents may search a probationer's home without a warrant, in the absence of other circumstances which would permit the intrusion.

The *Tarrell* opinion leads us to conclude, however, that a warrantless search of a probationer's dwelling is permissible. The *Tarrell* court employed the reasoning of two lead opinions on the point: *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975), and *U.S. v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975). *Tarrell*, 74 Wis. 2d at 652 n. 1 (citing *Consuelo-Gonzalez*), 655 n. 5 (citing *Latta*), 247 N.W.2d at 700–01. The *Latta* court recognized that parolees possess fourth amendment protections but concluded that the relationship between the parole officer and the parolee precludes deciding the propriety of a warrantless search by automatic reference to the law of ordinary search and seizure. 521 F.2d at 250–51. The court held that a parole officer need not obtain a warrant before making an otherwise reasonable search of a parolee's dwelling. *Id.* In *U.S. v. Consuelo-Gonzalez, supra*, the court applied the same rationale to the warrantless search of a probationer's dwelling, emphasizing the dual goals of probation: rehabilitation of a convicted person and protection of the public. 521 F.2d at 264–66.[3]

---

[3] The *Consuelo-Gonzalez* court invalidated a warrantless search for contraband by law enforcement officers under the Federal Probation Act, 18 U.S.C. sec. 3651. The court reiterated the *Latta* holding that a probation officer could have conducted a warrantless search of the defendant's dwelling and expressed no opinion regarding the extent to which a state may constitutionally allow a warrantless search by police of a probationer's residence. 521 F2d at 266.

By statute, a probationer is "in the custody of the department" of health and social services and subject to its control "under the conditions set by the court of rules and regulations established by the department." Some courts rely on constructive custody, waiver or consent to justify warrantless searches of probationers' and parolees' dwellings. *See, e.g., People v. Mason*, 488 P.2d at 634 (waiver of fourth amendment rights); *People v. Hernandez*, 40 Cal. Rptr. 100, 103–04 (Ct. App. Cal. 1964), *cert. denied*, 381 U.S. 953 (1965) (constructive custody); *People v. Richards*, 256 N.W.2d at 795 (consent). The reasoning in

We reject Griffin's argument that because innocent third persons were in his apartment, a warrant was necessary. Only one court, *State v. Fogarty,* 610 P.2d at 152, has so held. A second court, *State v. Velasquez,* 672 P.2d at 1260 n. 3, has said in dictum that caution would suggest that a warrant be obtained under those circumstances. In our view, because any search, with or without a warrant, can affect innocent third persons, no reason exists to require a warrant to protect the rights of those persons. *See People v. Mason,* 488 P.2d at 634.

■

We conclude that probation officers may conduct a warrantless search of a probationer's dwelling, notwithstanding failure of the search to meet one of the usual exceptions to the warrant requirement, provided that the search is otherwise reasonable.

■

Griffin contends that the warrantless search of his apartment must be deemed to have been made by the police rather than probation agents. He treats the issue as one of law. He asserts that his conclusion is compelled because the police had foreknowledge of, acquiesced in,

*State v. Tarrell,* that probationers have a reduced expectation of privacy based on the nature of probation itself, has been described as a "balancing theory." *See* 3 W. LaFave, *Search and Seizure* sec. 10.10(c), at 431 (1978), 1 W. Ringel, *Searches and Scizures, Arrests and Confessions* sec. 17.3, at 17–10 (1984). We think the trend is toward the balancing theory. Sec. 973.10 (1), Stats. *See, e.g., Latta v. Fitzharris,* 521 F.2d at 249 (purposes of parole system justify invasion of privacy); *Owens v. Kelley,* 681 F.2d at 1367 (rehabilitation of probationer and protection of society); *Roman v. State,* 570 P.2d at 1242 n. 20 (rehabilitation and protection); *State v. Fields,* 686 P.2d at 1390 (probation presupposes a partial surrender of privacy); *State v. Earnest,* 293 N.W.2d at 368 (special relationship between probation officer and probationer); *State v. Simms,* 516 P.2d at 1094 (parolee's status and rehabilitative role of probation).

and, in his view, actively participated in the search, and because the state seeks to use the evidence seized in a criminal prosecution. We reject his contention.

The trial court found that this was not a police search. That finding is tantamount to a factual inference from the established facts. The inference is that the search was made as part of the probation process rather than for law enforcement purposes. Treated as a factual inference, it is reasonable. We must accept the trial court's reasonable factual inferences from the established facts. *C.R. v. American Standard Ins. Co.*, 113 Wis. 2d 12, 15, 334 N.W.2d 121, 123 (Ct. App. 1983).

Other courts have held that the police may accompany a parole officer when a search is made. *People v. Anderson*, 536 P.2d at 305. As long as the predominant purpose is to determine whether probation has been violated, the search is valid. *Seim v. State*, 590 P.2d at 1155–56. The *Latta* court sustained a search by a parole officer accompanied by police, where the parole officer was not a "stalking horse" for the police. 521 F.2d at 247. The *Consuelo-Gonzalez* court recognized that a proper visitation by a probation officer did not cease to be so because he is accompanied by a law enforcement official unless the cooperation is a subterfuge for criminal investigation. 521 F.2d at 267. *Compare Roman v. State*, 570 P.2d at 1243 (right to search is limited to parole officers but includes peace officers acting under their direction); *State v. Turner*, 688 P.2d 1030, 1035 (Ct. App. Ariz. 1984) (search not invalid because of police assistance); *State v. Howard*, 143 Cal. Rptr. 342, 343 (Ct. App. Cal. 1978) (police search at request of probation officer valid); *State v. Simms*, 516 P.2d at 1095 (parole officer may enlist aid of police officer in performing his duty); *Sanderson v. State*, 649 P.2d 677, 679 (Wyo. 1982) (police search at probation officer's request held part of probation process).

Nor is a warrantless search by a probation agent invalidated because the evidence seized is used in a criminal prosecution. "To hold that evidence obtained by a parole officer in the course of carrying out this duty cannot be utilized in a subsequent prosecution because evidence obtained directly by the police in such a manner would be excluded, would unduly immunize parolees from conviction." *United States ex rel. Santos v. New York State Bd. of Par.*, 441 F.2d 1216, 1218 (2d Cir. 1971), *cert. denied*, 404 U.S. 1025 (1972). *See also, Latta v. Fitzharris*, 521 F.2d at 252–53 (evidence seized in valid search by parole officer may be used in criminal prosecution) ; *People v. Anderson*, 536 P.2d at 305 (evidence is admissible in the prosecution of another crime) ; *State v. Perbix*, 331 N.W.2d at 22 (evidence seized in valid search for probation violation may be used in new criminal prosecution) ; *State v. Velasquez*, 672 P.2d at 1262–63 (that evidence seized is beneficial to police or is used in criminal prosecution does not invalidate warrantless search of parolee's apartment).

2. *Grounds for Warrantless Search of Probationer's Dwelling—Compliance with Department Rules*

The supervisor testified that the search was conducted under rules adopted by the Department of Health and Social Services. The pertinent rule is Wis. Adm. Code sec. HSS 328.21(4), which permits probation agents to search a probationer's living quarters "if there are reasonable grounds to believe that the quarters . . . contain contraband."[4] Contraband includes any item

_____

[4] HSS 328.21 Search and seizure. (1) A search of a client, client's living quarters, or property may be made at any time, but only in accordance with this section.

. . . .

whose possession is forbidden by law. Wis. Adm. Code sec. HSS 328.16(1)(b). It is generally unlawful for a convicted felon to possess a firearm. Sec. 941.29(2), Stats.

(4) A search of a client's living quarters or property may be conducted by field staff if there are reasonable grounds to believe that the quarters or property contain contraband. Approval of the supervisor shall be obtained unless exigent circumstances require search without approval.

(a) There shall be a written record of all searches of a client's living quarters or property. This record shall be prepared by the staff member who conducted the search and shall be filed with the agent's supervisor. If the search was conducted without the supervisor's approval because of exigent circumstances, a report stating what the exigent circumstances were shall be part of the record and shall be filed with the supervisor within 48 hours of the search. The report shall state:

1. The identity of the client whose living quarters or property was searched;

2. The identity of the staff member who conducted the search and the supervisor, if any, who approved it;

3. The date, time, and place of the search;

4. The reason for conducting the search. If the search was a random one, the report shall so state;

5. Any items seized pursuant to the search; and

6. Whether any damage was done to the premises or property during the search.

(b) If any items are damaged pursuant to the search of a client's living quarters or property, the client shall be informed in writing what those items are.

(c) In conducting searches, field staff shall disturb the effects of the client as little as possible, consistent with thoroughness.

(d) During searches, staff shall not read any legal materials, communication between the client and an attorney, or any materials prepared in anticipation of a lawsuit. This does not include business records.

(e) If the client whose living quarters or property is being searched is not present, the agent may not forcibly enter the premises. A search should normally be conducted in the presence of another person.

(5) Field staff shall strive to preserve the dignity of clients in all searches conducted under this section.

An administrative agency is bound by its regulations. *Vitarelli v. Seaton,* 359 U.S. 535, 539–40 (1959). Consequently, the search cannot be valid unless the probation agents had "reasonable grounds to believe" that Griffin's apartment contained contraband. Wis. Adm. Code sec. HSS 328.21(4). Only if this standard is met need we examine whether the search is otherwise reasonable.

In the law of arrest, reasonable grounds is equated with probable cause. *State v. Drogsvold,* 104 Wis. 2d 247, 255, 311 N.W.2d 243, 247 (Ct. App. 1981). That is not the meaning of the standard in Wis. Adm. Code sec. HSS 328.21(4). The Note to HSS 328.21 states:

Although it is preferable to have searches and seizure conducted by law enforcement authorities, that may not

---

(6) Whenever feasible, before a search is conducted under this section, the client shall be informed that a search is about to occur, the nature of the search, and the place where the search is to occur.

(7) In deciding whether there are reasonable grounds to believe a client possesses contraband, or a client's living quarters or property contain contraband, a staff member should consider:

(a) The observations of a staff member;

(b) Information provided by an informant;

(c) The reliability of the information relied on; in evaluating reliability, attention should be given to whether the information is detailed and consistent and whether it is corroborated;

(d) The reliability of an informant; in evaluating reliability, attention should be given to whether the informant has supplied reliable information in the past, and whether the informant has reason to supply inaccurate information;

(e) The activity of the client that relates to whether the client might possess contraband;

(f) Information provided by the client which is relevant to whether the client possesses contraband;

(g) The experience of a staff member with that client or in a similar circumstance;

(h) Prior seizures of contraband from the client; and

(i) The need to verify compliance with rules of supervision and state and federal law.

always be feasible or advisable, and it is deemed important to give field staff the authority to conduct reasonable searches at reasonable times. Experience teaches that these searches may be necessary because contraband, including drugs and weapons, may be discovered during these searches. These searches are thought to deter the possession of contraband.

The contrast in the Note between police searches and staff searches shows that the reasonable grounds standard in HSS 328.21 is less than probable cause.

If, as here, the historical facts are undisputed or have been established, whether the agents had reasonable grounds to believe that Griffin's apartment contained contraband is a question of law. *Compare State v. Drogsvold,* 104 Wis. 2d at 262, 311 N.W.2d at 250 (probable cause for arrest is a question of law if historical facts are undisputed). We decide questions of law without deference to the trial court's conclusion.

Griffin contends that the probation supervisor lacked reasonable cause because he testified at the evidentiary hearing that an unnamed police officer had said that defendant "may have had guns" in his residence. To rely on that indefinite statement is unreasonable in Griffin's view.

The trial record shows that the supervisor had definite information that Griffin had a gun in his apartment. When reviewing an order on a motion to suppress evidence, an appellate court may take into account the evidence at the trial, as well as the evidence at the suppression hearing. *Carroll v. U.S.,* 267 U.S. 132, 162 (1925) ; *U.S. v. Canieso,* 470 F.2d 1224, 1226 (2d Cir. 1972) ; *U.S. v. Pearson,* 448 F.2d 1207, 1210 (5th Cir. 1971) ; *Rocha v. U.S.,* 387 F.2d 1019, 1021 (9th Cir. 1967), *cert. denied,* 390 U.S. 1004 (1968) ; *U.S. v. Smith,* 527 F.2d 692, 694 (10th Cir 1975). At the trial, the supervisor testified that the detective who called him

said "they had information that Mr. Griffin had [a gun] in his possession at his residence."

Griffin argues that to have reasonable cause, the supervisor needed more than the detective's statement that a gun was in Griffin's apartment. He asserts that we should apply the "totality of circumstances" analysis in *Illinois v. Gates,* 462 U.S. 213 (1983). Our state supreme court used that test when determining whether a reasonable person would have believed that an emergency existed which created a need for aid. *State v. Boggess,* 115 Wis. 2d 443, 455, 340 N.W.2d 516, 523 (1983).

We will not apply the "totality of circumstances" analysis created in *Illinois v. Gates, supra.* That analysis is used to determine whether a magistrate may conclude that probable cause exists to issue a warrant. We deal with the lesser standard of reasonable cause for a warrantless entry. The *Boggess* court dealt with a warrantless entry by a social worker and police officers for the safety and welfare of children. We deal with entry of the home of a person who is not entitled to the protection of a warrant and with a search required by the needs of probation.

Wisconsin Adm. Code sec. HSS 328.21 (7) directs that a probation agent consider "[t]he need to verify compliance with rules of supervision and state and federal law" when determining whether reasonable grounds exist to believe that a client's living quarters contain contraband. That need is extremely high when the agent believes that a firearm is in a probationer's home. As stated in the Note to sec. HSS 328.21:

Contraband, particularly weapons, may be used to threaten, injure, or kill another. That weapons be kept out of the hands of clients is critical for the safety of others. Contraband must also be kept out of the hands of clients so they may be better able to participate in

jobs, schooling or training, and other programs effectively.

We hold that a probation officer has reasonable grounds to believe that a probationer's living quarters contain contraband when told by the police that the quarters contain a gun. The search therefore met the requirements of the administrative regulation under which it was conducted, Wis. Adm. Code sec. HSS 328.21(4).

### 3. *"Reasonable Grounds to Believe" Sufficient for Warrantless Search*

Other courts which permit a warrantless search of a probationer's dwelling also hold that the search may be constitutionally made on less than probable cause to believe that a probation violation has occurred. Those courts variously describe the appropriate standard. *See, e.g., Latta v. Fitzharris,* 521 F.2d at 250 (reasonable belief that search is necessary but parole officer's "hunch" said to be sufficient); *People v. Anderson,* 536 P.2d at 305 (reasonable grounds); *State v. Fields,* 686 P.2d at 1390 (reasonable suspicion supportable by specific and articulable facts); *State v. Malone,* 403 So.2d at 1239 (reasonable suspicion); *State v. Williams,* 486 S.W.2d 468, 473 (Mo. 1972) (sufficient information to arouse suspicion); *State v. Culbertson,* 563 P.2d at 1229 (minimal information or even spot checking as dictated by experience); *State v. Velasquez,* 672 P.2d at 1260 (reasonable suspicion); *State v. Simms,* 516 P.2d at 1096 (well-founded suspicion).

Some courts allow a warrantless search of a probationer's dwelling even if no grounds exist to believe that a probation violation has occurred. The eleventh circuit finds no constitutional requirement even of rea-

sonable suspicion, if the search is performed in a reasonable manner. *Owens v. Kelley,* 681 F.2d at 1368–69. *See also People v. Mason,* 488 P.2d at 634 (probationer held to have consented to condition permitting searches whenever requested by police officers) ; *State v. Morgan,* 295 N.W.2d at 286 (condition authorizing search "with or without probable cause" held valid) ; *State v. Perbix,* 331 N.W.2d at 21 (searches permitted without reasonable suspicion).

The "reasonable grounds to believe" standard in Wis. Adm. Code sec. HSS 328.21 (4) is, however, the minimum we should consider. It binds probation agents in this state. Because the Department of Health and Social Services must abide by its own regulations, we need not decide whether a lesser standard is acceptable.

The many decisions we have already cited show that a "reasonable" standard or one comparable to it has been held to be constitutionally acceptable. The reasonable standard adopted by the department should adequately protect probationer from intrusions of their dwellings without grounds and from harassment by probation agents. We approve it.

### 4. *Reasonableness of Search Itself*

The time, manner and scope of the search are not challenged on appeal and we therefore do not reach the reasonableness of the search itself. Any warrantless search conducted in furtherance of the purposes of probation must, of course, be carried out in reasonable manner, *Owens v. Kelley,* 581 F.2d at 1368–69; *Latta v. Fitzharris,* 521 F.2d at 252.

Because we conclude that the search was valid under the fourth amendment, we affirm the judgment appealed from.

*By the Court.*—Judgment affirmed.

DYKMAN, J. (dissenting). The fourth amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The fourth amendment does not contain an escape clause for warrantless searches of probationers' homes, nor does it suggest that the term "probable cause" may be interpreted to mean "hunch" or "guess." There is no constitutional language suggesting a difference between parole officers and police.[1] The prohibition is against

---

[1] The majority finds it significant that a parole officer rather than a police officer searched defendant's residence. This distinction is not relevant to a fourth amendment analysis. In *New Jersey v. T.L.O.*, —— U.S. ——, ——, 83 L. Ed. 2d 720, 730 (1985), the court said:

It may well be true that the evil toward which the Fourth Amendment was primarily directed was the resurrection of the pre-Revolutionary practice of using general warrants or "writs of assistance" to authorize searches for contraband by officers of the Crown. *See United States v. Chadwick*, 433 U.S. 1, 7–8, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977); *Boyd v. United States*, 116 U.S. 616, 624–629, 29 L. Ed. 746, 6 S. Ct. 524 (1886). [T]his Court has never limited the Amendment's prohibition on unreasonable searches and seizures to operations conducted by the police. Rather, the Court has long spoken of the Fourth Amendment's strictures as restraints imposed upon "governmental action"—that is, "upon the activities of sovereign authority." *Burdeau v. McDowell*, 256 U.S. 465, 475, 65 L. Ed. 1048, 41 S. Ct. 574, 13 A.L.R. 1159 (1921). Accordingly, we have held the

unreasonable searches, and a prescribed quantum of evidence is required for the search.

The United States Supreme Court has recently said:

It is axiomatic that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." And a principal protection against unnecessary instrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. It is not surprising, therefore, that the Court has recognized, as "a 'basic principle of Fourth Amendment law[,]' that searches and seizures inside a home without a warrant are presumptively unreasonable."

Consistently with these long-recognized principles, the Court decided in *Payton v. New York, supra,* that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. [Citations and footnotes omitted.]

*Welsh v. Wisconsin,* —— U.S. ——, ——, 80 L. Ed. 2d 732, 742–43 (1984).

*Welsh* was an "exigent circumstances" not a "probable cause" case. Still, the court quoted *Johnson v. United States,* 333 U.S. 10, 13–14 (1948), for the rule that forcible entry into homes may be made only with a search warrant:

Fourth Amendment applicable to the activities of civil as well as criminal authorities: building inspectors, *see Camara v. Municipal Court,* 387 U.S. 523, 528, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), OSHA inspectors, *see Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312–313, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978), and even firemen entering privately owned premises to battle a fire, *see Michigan v. Tyler,* 436 U.S. 499, 506, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978), are all subject to the restraints imposed by the Fourth Amendment. As we observed in *Camara v. Municipal Court, supra,* "[t]he basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." 387 U.S., at 528, 18 L. Ed. 2d 930, 87 S. Ct. 1727.

In *Johnson,* Justice Jackson eloquently explained the warrant requirement in the context of a home search:
"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . The right of officers to thrust themselves into a home is . . . a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent."

*Welsh* at ——, 80 L. Ed. 2d at 742, n. 10.

In *Thompson v. Louisiana,* —— U.S. ——, ——, 83 L. Ed. 2d 246, 250 (1984), *reh'g denied,* —— U.S. ——, 83 L. Ed. 2d 983 (1985), the court reiterated the warrant requirement, and listed the exceptions to that requirement:

In a long line of cases, this Court has stressed that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (footnotes omitted). This was not a principle freshly coined for the occasion in *Katz,* but rather represented this Court's long-standing understanding of the relationship between the two clauses of the Fourth Amendment. See *Katz supra,* at 357 n 18 and 19, 19 L. Ed. 2d 576, 88 S. Ct. 507. Since the time of *Katz,* this Court has recognized the existence of additional exceptions. See, e.g., *Donovan v. Dewey,* 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534 (1981); *United States v. Martinez-Fuerte,* 428 U.S. 543, 49 L. Ed. 2d 116, 96 S. Ct. 3074 (1976); *South Dakota v. Opperman,* 428 U.S. 364, 49 L. Ed. 2d

1000, 96 S. Ct. 3092 (1976). However, we have consistently reaffirmed our understanding that in all cases outside the exceptions to the warrant requirement the Fourth Amendment requires the interposition of a neutral and detached magistrate between the police and the "persons, houses, papers and effects" of the citizen. [Footnote omitted.]

In *New Jersey v. T.L.O.*, —— U.S. ——, ——, 83 L. Ed. 2d 720 (1985), the court also recognized a "school setting" exception to the fourth amendment's warrant requirement.

None of the exceptions listed in *Thompson* and *T.L.O.* suggest that the majority's exception for probationers exist. The Supreme Court refers to "a few specifically established and well delineated exceptions." *Thompson, supra*, —— U.S. ——, ——, 83 L. Ed. 2d at 250. If exceptions must be specifically established and well delineated, a state court of appeals statement that the lack of a "probationer" exception need not deter it from creating one is difficult to accept. Given the Supreme Court's forceful language concerning exceptions in fourth amendment cases, I would leave it to that court to determine whether a "probationer" exception exists.

Even accepting the majority's conclusion that a warrantless search of a probationer's dwelling may be made with reasonable grounds to believe the dwelling contains contraband, those grounds do not exist in this case.

The facts surrounding the search are more extensive than the majority suggests. The probation officer testified that he could not recall which police officer told him of the existence or possible existence of defendant's gun, though he thought it was Officer Pittner. Officer Pittner did not recall telling the probation officer that defendant possessed a gun.

We cannot tell whether the unknown police officer told the probation officer that defendant had a gun or possibly had a gun—the probation officer testified to

both. We cannot tell whether the unknown police officer's belief was founded on a hunch, informant information, rumor or imagination. Without knowing where information comes from, no one can form a conclusion, let alone a reasonable conclusion, that the information meets the "reasonable grounds to believe" standard adopted by the majority. In reality, the majority's standard is merely whether a possibility exists that a probationer possesses a gun. This amounts to license for police to break into any probationer's home at any time for any or no reason.

Probationers may achieve their status as a result of convictions for disorderly conduct, drunk driving, or fish and game law violations, as well as by being convicted of a major felony. Making all probationers' homes subject to forcible searches by the police for little if any reason results in the very evil the fourth amendment was designed to prevent. Probationers' guns and drugs are readily seized through the use of warrants or existing warrant exceptions. We do not need the one adopted by the majority.