STATE of Wisconsin, Plaintiff-Respondent,

v.

Colleen (NMI) WEST, Defendant-Appellant.†

Court of Appeals

*No. 92–1017–CR. Submitted on briefs March 11, 1993.—Decided September 2, 1993.*

(Also reported in 507 N.W.2d 343.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Jeffrey D. Knickmeier* of Stoughton.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J. In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the United States Supreme Court held that the warrantless, nonconsensual search of a probationer's home by state probation officers pursuant to Wis. Adm. Code sec. HSS 328.21(3) (1981), was not an unreasonable search under the fourth amendment to the United States Constitution. In this case we decide that defendant Colleen West, who shared an apartment rented by parolee Paul Clark, did not have a legitimate expectation of privacy which precluded a parole officer from searching the apartment pursuant to Wis. Adm. Code sec. DOC 328.21(3)(a) without her consent and without obtaining a search warrant. We further hold that property subsequently seized by police as a result of such search was not the fruit of an unreasonable search.

West also claims that the record does not show that a Minnesota forgery conviction was a crime which the trial court could consider under sec. 939.62(3)(b),

184

Stats., to enhance her sentence. We conclude that her no contest plea to the charges in the criminal information which contained a repeater allegation constituted an admission under sec. 973.12, Stats., of the repeater allegation. We therefore reject West's claims and affirm the trial court's judgment.

## BACKGROUND

Defendant West was charged in a criminal complaint and information with sixty-eight counts of misdemeanor and felony theft, each as a repeat offender. Sections 943.20 and 939.62, Stats. She was charged with theft of personal property found during a November 13, 1988 search of an apartment West shared with parolee[1] Paul Clark, and later seized pursuant to a search warrant. At the time of the search, Clark was in jail.

It is undisputed that neither Clark nor West consented to the search. The search was conducted by Clark's Probation and Parole Agent James Trameri, City of Madison Police Department Detective Mark Twombly, and two other police officers. Defendant Colleen West was present and objected to the search.

In their search of the apartment, the officers discovered numerous items of electronic equipment and recorded the serial numbers. The police later determined that some of the items seen in the apartment had been reported stolen. They obtained a search warrant which they executed on December 1, 1988, finding the apartment empty. West later told the police that she had moved the contents to a storage locker. She

---

[1] At the suppression hearing, West testified that when she got involved with Clark in leasing the apartment she knew Clark was on parole.

consented to a search of the storage locker which revealed a majority of the items previously seen by the officers in the apartment. The police seized the items.

The trial court denied West's motion to suppress the evidence seized as a result of these searches. West then entered negotiated pleas to five counts of the information, all of which charged felonies. West did not file a motion for postconviction relief under sec. 809.30, Stats. She appeals from the judgment of conviction and sentence.

## STANDARD OF REVIEW

Whether the search of the apartment West shared with Clark violated her right to be free from an unreasonable search under the fourth amendment is a question of constitutional law which we review independently and without deference to the circuit court, except insofar as the conclusions of the circuit court may be persuasive. *State v. Guzman*, 166 Wis. 2d 577, 586, 480 N.W.2d 446, 448, *cert. denied*, 119 L.Ed.2d 575 (1992).

West's argument that the record is insufficient to support the state's repeater allegation requires application of sec. 973.12, Stats., to the undisputed facts. The application of a statute to undisputed facts presents a question of law, which we also decide without deference to the trial court. *Guertin v. Harbour Assurance Co.*, 141 Wis. 2d 622, 627, 415 N.W.2d 831, 833 (1987).

## I.

## THE FIELD SUPERVISION SEARCH

Wisconsin Adm. Code sec. DOC 328.21 provides:

> (1) General Policy. A search of a client or the client's living quarters or property may be made at any time, but only in accordance with this section.
>
> . . . .
>
> (3) Search of Living Quarters or Property. (a) A search of a client's living quarters or property may be conducted by field staff if there are reasonable grounds to believe that the quarters or property contain contraband. Approval of the supervisor shall be obtained unless exigent circumstances, such as suspicion the parolee will destroy contraband or use a weapon, require search without approval.

"Client" "means a person who is committed to the custody of the department [of corrections] for correctional purposes and is under field supervision of the department . . . ." Wisconsin Adm. Code sec. DOC 328.03(5). Thus, "client" includes a parolee. "Field staff" "means the professional and paraprofessional workers of the [department] assigned the responsibility for the control, supervision, and provision of program services to clients." Wisconsin Adm. Code sec. DOC 328.03(18). Thus, "field staff" includes parole agents and probation officers.

In *Griffin*, the Court held that the Wisconsin Administrative Code rules and regulations authorizing the department's employees to conduct a warrantless search of a probationer's living quarters satisfied the fourth amendment's reasonableness requirement. 483 U.S. at 872–73. West does not challenge *Griffin's* correctness. She argues that her rights were not affected

by Clark's status and that the authorities had no right based upon Wis. Adm. Code sec. DOC 328.21 to search her residence and dwelling without a warrant and without her consent.[2]

West further argues that "all doubts regarding this matter have been resolved by the . . . recent United States Supreme Court decision in *Minnesota v. Olson*, [495 U.S. 91 (1990)]." In *Olson*, the police made a warrantless, nonconsensual entry into a house where Olson was an overnight guest, and arrested him. The Court held that the arrest violated Olson's fourth amendment rights. The Court said that Olson's status as an overnight guest was enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable. 495 U.S. at 96–97. West argues that if she would have had a reasonable expectation of privacy had she been Clark's overnight guest, "it is very clear that her status as regular resident, exercising full dominion and control confers standing on her."

The state asserts that *Olson* holds that an overnight guest's expectation of privacy is derived from the host's degree of control over the premises. We disagree. *Olson* holds that the guest's expectation of privacy is analyzed from the guest's perspective. The Court said: "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his

---

[2] The trial court found that the apartment which the parole officer and the police searched was Clark's residence. The court rejected West's claim that the residence was hers, to the exclusion of Clark. The state does not dispute West's statement to agent Trameri that she and Clark lived together at the apartment.

host allows inside." *Id.* at 99. West's expectation of privacy was based on her belief that she and her possessions could not be disturbed by anyone because the living quarters she shared with Clark were her home. However, West had only a limited expectation of privacy because Clark's status as a parolee allowed department field staff to make a warrantless, nonconsensual search of Clark's living quarters, which West shared in full knowledge of Clark's parolee status.

There are few decisions on the effect of a parolee's or probationer's status upon the privacy rights of those who live with the parolee or probationer. The state asks us to adopt the reasoning of *Russi v. Superior Court of Napa County*, 33 Cal. App. 3d 160, 168–69, 108 Cal. Rptr. 716, 720–21 (1973), and later decisions of the California Court of Appeals. In *Russi*, a cotenant of a probationer contended that as to him, a warrantless, nonconsensual search of the premises was constitutionally unreasonable because he did not consent to the search or waive his fourth amendment rights. The court rejected *Russi*'s contention, holding that "if the entry and search was reasonable and lawful as to the probationer cotenant, [*Russi*'s] consent is irrelevant and *he is in no position* to claim that the officers did not have the right to search the premises and seize any contraband discovered in the process." *Id.* at 168, 108 Cal. Rptr. at 720 (emphasis in original). As to the narcotics and drug paraphernalia seized by the police in their search, the court said:

> There would be a gross moral and legal incongruity in a requirement that police blind themselves to evidence discovered in a lawful search that may implicate a third person while the use of the same or other evidence is permitted against a probationer

who faces both a new prosecution and revocation of probation.

*Id.* at 169, 108 Cal. Rptr. at 720–21.

While we agree with the result reached by the California Court of Appeals, we disagree with the court's apparent assumption that the issue was Russi's "standing" to object to the search. The "standing" analysis of fourth amendment violation claims was rejected by the United States Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 138–48 (1978). The appropriate analysis is whether the person claiming fourth amendment protection against an unreasonable search has a legitimate expectation of privacy in or to the property or person searched. Whether the person invoking the protection of the fourth amendment can claim a legitimate expectation of privacy "normally embraces two discrete questions." *Smith v. Maryland*, 442 U.S. 736, 740 (1979). The first is whether the individual, by his or her conduct, has "exhibited an actual (subjective) expectation of privacy." *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). The second question is whether the individual's subjective expectation of privacy is "legitimate," that is, "one that society is prepared to recognize as 'reasonable' ": "whether . . . the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Id.* (quoting *Katz*, 389 U.S. at 353).

West testified that Trameri told her that "he was there to do a search on Paul Clark." She told the officers that she lived there, not Clark. She further testified that Twombly then told her that he was going to do the search on Clark and if she didn't step aside she would be arrested for obstruction. We are satisfied that West exhibited a subjective expectation of privacy.

190

However, we are not convinced that West's expectation of privacy is one that society is prepared to recognize as reasonable. It is undisputed that Clark leased the apartment and that he lived there with West. West knew Clark was a parolee. The legitimacy of West's expectation must be tested against that knowledge. In *Griffin*, the Court said: "A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." 483 U.S. at 873–74. In *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619 (1989) (citing *Griffin,* 483 U.S. at 873), the Court said that: "When faced with such special needs, we have not hesitated to balance the governmental and privacy interests to assess the practicality of the warrant and probable cause requirements in the particular context."

In addition to *Griffin,* the *Skinner* Court cited several decisions in which the Court concluded that the government interest outweighed privacy interests: *New York v. Burger,* 482 U.S. 691, 699–703 (1987) (search of premises of certain highly regulated businesses); *O'Connor v. Ortega,* 480 U.S. 709, 721–25 (1987) (work-related searches of employees' desks and offices); *New Jersey v. T.L.O.,* 469 U.S. 325, 337–42 (1985) (search of students' property by school officials); and *Bell v. Wolfish,* 441 U.S. 520, 558–60 (1979) (body cavity searches of prison inmates). In *Skinner,* the Court concluded that regulations adopted by the Federal Railroad Administration authorizing railroads to administer breath and urine tests to employees who

violated certain safety rules did not violate the employees' fourth amendment rights.

■

*Griffin*'s reasoning applies equally to the parole system. There is "no constitutional difference between probation and parole for purposes of the fourth amendment." *United States v. Hill*, 967 F.2d 902, 909 (3d Cir. 1992) (quoting *United States v. Harper*, 928 F.2d 894, 896 n.1 (9th Cir. 1991)). "In fact, parole may be an even more severe restriction on liberty because the parolee has already been adjudged in need of incarceration." *Id.* (citing *United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990), *cert. denied*, 498 U.S. 1049 (1991)). Thus, the " 'special needs' of probation would appear to be heightened for parole." *Id.* (citing *Harper*, 928 F.2d at 896 n.1).

The "special needs" identified by the *Griffin* Court include that the delay inherent in obtaining a warrant makes it more difficult for probation officials to respond quickly to evidence of misconduct, and reduces the deterrent effect that the possibility of expeditious search would otherwise create. 483 U.S. at 876. Also, a probation officer is to have in mind the welfare of the probationer, to provide individualized counselling for the client, to monitor the client's progress and evaluate the need for continuation of services provided by other governmental agencies. *Id.* at 876–77.

LaFave finds unconvincing the *Griffin* majority's reasoning that "the special needs of Wisconsin's probation system make the warrant requirement impracticable." 4 W. LAFAVE, SEARCH AND SEIZURE § 10.10, at 24 (2nd ed. 1993 Supp.). Another commentator who surveyed a sample group of Wisconsin probation and parole officers concluded:

There is reason to be fearful of the Supreme Court's willingness to validate a waiver of the warrant requirement for a large and diverse group of citizens based on undocumented contentions about probation supervision. Contrary to the *Griffin* majority's assumption, a warrant requirement imposed for non-emergency searches would not unduly burden Wisconsin probation departments because agents reported that they need to utilize their search power rather infrequently.

Comment, *Conflicting Perspectives from the Bench and the Field on Probationer Home Searches—Griffin v. Wisconsin Reconsidered*, 1989 WIS. L. REV. 607, 664 (1989).

LaFave suggests that Justice Blackmun, speaking for three members of the *Griffin* Court, effectively countered the majority's conclusion that a warrant requirement would interfere to an appreciable degree with Wisconsin's probation system. LAFAVE § 10.10, at 25. Justice Blackmun stated:

> There is nothing about the *status* of probation that justifies a special exception to the warrant requirement under these circumstances. If in a particular case, there is a compelling need to search the home of a probationer without delay, then it is possible for a search to be conducted immediately under the established exception for exigent circumstances. There is no need to create a separate warrant requirement for probationers. The existing exception provides a probation agent with all the flexibility the agent needs.

483 U.S. at 885 (emphasis in original).

It is tempting to apply the *Griffin* dissent's reasoning to West. She is not subject to Wis. Adm. Code sec. DOC 328.21. The "special needs" of Wisconsin's proba-

tion and parole system do not apply to her. The fourth amendment "protects people, not places." *Smith*, 442 U.S. at 739 (quoting *Katz v. United States*, 389 U.S. at 351–53). West is not subject to the deterrent effect of an expeditious search for contraband and it is not her welfare which the probation officer or parole agent has in mind.

Nonetheless, we conclude that West, because she knew of Clark's parolee status, did not have a legitimate expectation of privacy in the living quarters she shared with Clark. To accord her that expectation of privacy would emasculate the special needs of Wisconsin's probation and parole system. We agree with the conclusion of the Utah Supreme Court in *State v. Johnson*, 748 P.2d 1069, 1073 (Utah 1987), where the court said:

> A warrantless search of a parolee may result in an invasion of privacy, at least to some extent, for those living with the parolee. If the Fourth Amendment rights of nonparolees living with parolees were not reduced, a parolee could avoid all warrantless parole searches by living with a nonparolee and asserting the nonparolee's constitutional rights, and thus emasculate one significant feature of the parole system.

LaFave cites *Johnson* and *United States v. Davis*, 932 F.2d 752 (9th Cir. 1991),[3] to support the following statement:

---

[3] In *Davis*, the Ninth Circuit Court of Appeals held that the defendant had a legitimate expectation of privacy in an apartment occupied by a probationer because he had a key to the apartment, stored things there in a locked safe, and was free to come and go as he pleased. 932 F.2d at 757. The court held, however, that the police could have reasonably suspected that

> If the probationer or parolee is sharing living quarters with someone else not on conditional release, the search may nonetheless extend to all parts of the premises to which the probationer or parolee has common authority.

LaFave § 10.10, at 21 n.70.1. We do not hold that a person who shares living quarters with a probationer or parolee can never have a legitimate expectation of privacy in any portion of the shared premises or in the person's private property located on the premises. It may be that the person whose liberty is not conditionally restricted will have so separated his or her living quarters or personal property that they cannot be considered the "client's living quarters or property" under Wis. Adm. Code sec. DOC 328.21(1).

In her brief, West mentions in passing that none of the procedures set forth in Wis. Adm. Code sec. DOC 328.21 were followed and "Clark was not informed of the search, etc." Wisconsin Adm. Code sec. DOC 328.21(5), provides: "Whenever feasible before a search is conducted under this section, the client shall be informed that a search is about to occur, why and how the search will be conducted and the place where the search is to occur." However, West does not cite to any point in the record which establishes Clark was not given this notice. Rule 809.19(1)(e), Stats., requires that the appellant's brief cite those parts of the record relied on to support the appellant's arguments. We will not search the record to supply the facts necessary to support the appellant's argument, nor will we develop

---

the safe where they discovered contraband was jointly owned, possessed, or controlled by Davis and the probationer and was thus subject to search under the rubric of the probationer's search condition. *Id.* at 759.

appellant's argument. *State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980). Whether West has standing to argue that the department's field staff failed to comply with Wis. Adm. Code sec. DOC 328.21 is completely undeveloped.

## II.

## WEST'S REPEATER STATUS

West claims that the record does not support that her 1985 Minnesota conviction for forgery satisfied the requirements of sec. 936.62(3)(b), Stats., and allowed the trial court to enhance her sentence thereunder. The state suggests a number of reasons why we should reject West's claim; however, we conclude that *State v. Rachwal*, 159 Wis. 2d 494, 512–13, 465 N.W.2d 490, 497 (1991), is sufficient. In *Rachwal* the court concluded that a plea of guilty or no contest to a criminal complaint containing a repeater provision alleging a prior conviction constituted, under sec. 973.12, Stats., an admission by the defendant of such prior conviction.

The criminal information herein charged that:

> [I]nvoking the provisions of Section 939.62 of the Wisconsin Statutes, the Defendant, COLEEN "NMI" WEST, was previously convicted of the following offense(s): Convicted in Hennepin County District Court on May 30, 1985, of the crime of Forgery, contrary to the Minnesota Statutes, which conviction(s) remain of record and unreversed; and, therefore, upon conviction of the charged offense and proof of repeater, may be imprisoned for an additional six (6) years.

This allegation was contained in each count to which West pleaded no-contest. We conclude that by pleading no-contest to the repeater charge, West admitted that the charge could be considered by the trial court in determining her sentence. Further, at the plea hearing, West acknowledged the truthfulness of the allegations as to the repeater offense. We conclude that by her plea to the charges containing this allegation, West admitted that the Minnesota crime was a prior conviction under sec. 973.12, Stats.

*By the Court.*—Judgment affirmed.

DYKMAN, J. (*dissenting*). The majority views this case as a choice between denying fourth amendment protection to those who live with probationers or parolees and providing a safe haven for probationers and parolees, undercutting *Griffin v. Wisconsin*, 483 U.S. 868 (1987). Were that choice necessary, this would be a more difficult case. But it is not. What the majority has done is to set up a straw man, and then, with reluctance, tear it down. I believe that we can simultaneously follow *Griffin*, deny probationers and parolees full fourth amendment protection, and yet grant that protection to all other citizens. Therefore, I dissent.

The majority worries that the fourth amendment rights of a person living with a parolee would transfer to the parolee, entitling the parolee to assert those rights. That was the Utah Supreme Court's theory in *State v. Johnson*, 748 P.2d 1069, 1073 (Utah 1987). The Utah court concluded that a parolee could avoid all warrantless parole searches by living with a nonparolee. There is no logic to this reasoning. *Griffin* holds that parolees and probationers have limited

fourth amendment rights. A search of a parolee's residence pursuant to Department of Corrections rules is valid, whether the parolee lives alone or with someone. Evidence obtained as a result of that search is admissible against the parolee. A parolee cannot avoid warrantless searches by living with a nonparolee. The fears of the majority and of the Utah Supreme Court are groundless.

The search of the apartment did not produce evidence which incriminated Clark. This case is not a review of Clark's parole revocation, nor is it a review of charges brought against Clark. This is a criminal action against West, and the evidence sought to be suppressed incriminated West, not Clark.[1] The question is not, as the majority suggests, whether we should apply *Griffin*'s reasoning to West, but whether a person forfeits his or her fourth amendment protections by choosing to live with a probationer or parolee. By attacking a straw man, the majority avoids the real question posed by this case.

Because it is not necessary to abrogate West's fourth amendment rights to ensure that Clark cannot avoid *Griffin*, Clark and his status need not be considered in analyzing the search of the apartment. The proper analysis is not difficult. Three police officers and a probation and parole agent searched West's residence without a warrant, without exigent circumstances, and without West's permission. That is exactly the type of search prohibited by the fourth amendment. The result is that the evidence seized in the search must be sup-

---

[1] Perhaps the seized evidence also incriminated Clark. But that is not relevant. If the evidence also incriminated Clark, the facts in Clark's case would be identical to those in *Griffin*, and the same result should occur.

pressed insofar as the state seeks to use it against West.

In *State v. Griffin*, 126 Wis. 2d 183, 206, 376 N.W.2d 62, 73 (Ct. App. 1985) (Dykman, J., dissenting), *aff'd*, 131 Wis. 2d 41, 388 N.W.2d 535 (1986), *aff'd*, 483 U.S. 868 (1987), I noted in dissent that probationers may achieve their status as a result of convictions for disorderly conduct, drunk driving, and fish and game law violations. Many persons are convicted of issuing worthless checks and placed on probation. A person who makes a bet can be placed on probation, as can a person who drinks intoxicants while a passenger on a common carrier. Persons convicted of possessing small amounts of marijuana are commonly placed on probation. The majority has concluded that the parents, grandparents, siblings, roommates and spouses of persons convicted of any of these crimes have forfeited their fourth amendment rights if they continue living with their children, grandchildren, siblings, roommates or spouses.

The majority may be convinced that society is prepared to accept as reasonable the nighttime breaking down of parents' doors and the subsequent search of the home while the occupants are handcuffed, with the only justification being that a teenage son is on probation for possessing a marijuana cigarette.[2] I am not so convinced.

---

[2] *Griffin* also requires that "reasonable grounds" for the search exist, 126 Wis. 2d at 200–01, 376 N.W.2d at 70–71, which in that case was a statement by a police officer that Griffin may have had guns. *Id.* at 186, 376 N.W.2d at 63–64. Thus, a police officer's statement that an individual might have an illegal trout or marijuana cigarette would be sufficient for a probationer search.

If the police have probable cause to believe that a person has contraband or stolen items in his or her home, there is no reason why the police cannot obtain a warrant to search that person's home. That the occupant lives with a probationer or parolee is no reason to invent an exception to the fourth amendment. Here, the police apparently had no belief that West possessed stolen goods when they entered her home without a warrant and without her permission. She was in no different position from that of most of Wisconsin's residents except that, unknown to the police, she possessed stolen goods. That is not enough for a warrantless search of anyone's residence. Therefore, were I writing for the majority, I would reverse and remand with instructions to suppress the evidence found during the search at West's trial.