STATE of Wisconsin, Plaintiff-Respondent,

v.

Colleen (NMI) WEST, Defendant-Appellant-Petitioner.

Supreme Court

*No. 92–1017–CR.  Oral argument March 31, 1994.—Decided June 22, 1994.*

(Also reported in 517 N.W.2d 482.)

71

74

For the defendant-appellant-petitioner there were briefs by *Jeffrey D. Knickmeier,* Stoughton and oral argument by *Jeffrey D. Knickmeier.*

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Eric Schulenburg,* Madison for American Civil Liberties Union of Wisconsin Foundation, Inc.

DAY, J.   This is a review of a published court of appeals decision affirming a judgment of the circuit court for Dane County, Honorable Robert R. Pekowsky, Judge.[1] We affirm the court of appeals.

The defendant, Ms. Colleen West (Ms. West), and her co-defendant, Paul Clark (Mr. Clark), were charged with sixty-eight counts of theft under sec. 943.20, Stats. Ms. West was charged as a repeat offender under sec. 939.62, Stats. She was convicted and sentenced after a plea agreement, whereby she pleaded "no contest" to five of the counts.

---

[1] *State v. West,* 179 Wis. 2d 182, 507 N.W.2d 343 (Ct. App. 1993).

The charges were based upon stolen property found during a warrantless and nonconsensual search of Mr. Clark's apartment which he shared with Ms. West. The search was conducted against Mr. Clark, a parolee, pursuant to Wis. Admin. Code sec. DOC 328.21(3), hereinafter, DOC 328.21(3).[2] When the search was executed, the officers found Ms. West occupying the apartment. The officers explained that they were conducting a search on Mr. Clark pursuant to Department of Corrections (DOC) regulations. Ms. West's consent was not sought. A large amount of stolen property was discovered during the search. The stolen property was eventually seized at another location and was used as evidence against Ms. West.

Ms. West brought a motion in the circuit court to suppress the evidence of the stolen property found during the search of the apartment, claiming that the search of Mr. Clark's apartment violated her Fourth Amendment protection against unreasonable searches and seizures. The circuit court denied her suppression motion, based in part on what the court phrased as a

---

[2] This section was created in 1981, Cr. Register, December 1981, No. 312, eff. 1–1–82, as Wis. Admin. Code sec. HSS 328.21 (4). This section was since repealed and recreated as Wis. Admin. Code sec. DOC 328.21(3) in April of 1986, effective May 1986. It was that section which was in effect at the time of the search. The operative language governing parole searches changed only location, not content. The current dating of the section is from April 1990. Section DOC 328.21(3) provides as follows: SEARCH OF LIVING QUARTERS OR PROPERTY. (a) A search of a client's living quarters or property may be conducted by field staff if there are reasonable grounds to believe that the quarters or property contain contraband. Approval of the supervisor shall be obtained unless exigent circumstances, such as suspicion the parolee will destroy contraband or use a weapon, require search without approval.

lack of "standing" to challenge the propriety of the search. Ms. West then entered the plea agreement.

On appeal, Ms. West challenged her conviction and the circuit court's dismissal of her motion to suppress the evidence obtained following the search of Mr. Clark's apartment.[3] The court of appeals affirmed the circuit court's dismissal of Ms. West's suppression motion and affirmed her conviction, but it rejected the "standing" terminology used by the circuit court. Instead the court of appeals concluded that Ms. West's motion should be denied because she had no reasonable expectation of privacy because the apartment was Mr. Clark's and she knew he was a parolee. *West,* 179 Wis. 2d at 191.

Ms. West then petitioned for review in this court, which was granted. Review was sought only as to the search and seizure question. We conclude that the search and seizure were valid and that the evidence found in the search may be used against Ms. West. We therefore affirm the decision of the court of appeals. We conclude that Ms. West did have a reasonable expectation of privacy in the apartment, but because her control of the apartment was shared with Mr. Clark, the parole search could validly extend to all those areas in which Mr. Clark enjoyed common authority.

The background of this case is framed by two important facts. The first fact is that Mr. Clark, Ms. West's companion and co-defendant in the circuit court case, leased an apartment in Madison and allowed Ms. West to occupy the apartment. Mr. Clark retained access to the apartment, maintained possessions at the apartment, and stayed at the apartment with Ms. West

---

[3] Ms. West also challenged the application of the repeater statute, sec. 939.62, Stats., before the court of appeals. That issue is not before this court.

many times during the couple of months it was leased. In short, they shared the apartment.

The next important fact is that Mr. Clark was on parole. As a parolee, Mr. Clark was subject to certain conditions on his release as elaborated in Wis. Admin. Code, sec. DOC 328. Among the conditions placed on Mr. Clark's release on parole was the requirement that he refrain from committing further criminal acts while on parole and the requirement that he report his residence(s) to the DOC and local law enforcement authorities. *See, Griffin v. Wisconsin,* 483 U.S. 868, 870–871, 107 S. Ct. 3164 (1987), affirming *State v. Griffin,* 131 Wis. 2d 41, 388 N.W.2d 535 (1986); *State v. Tarrell,* 74 Wis. 2d 647, 653–655, 247 N.W.2d 696 (1976).

Mr. Clark's activities had come under suspicion of the DOC officials. They suspected that Mr. Clark was engaged in criminal activity despite being on parole. They also suspected that Mr. Clark was maintaining an unreported apartment in Madison. Mr. Clark's only reported residence was in Pardeeville. He never did report his Madison apartment to the proper authorities. Following events which need not be described here, Mr. Clark was held in Columbia County jail. While detained, Mr. Clark was asked by a parole officer whether he had an unreported apartment in Madison. Mr. Clark denied that he had any such apartment. Soon thereafter, however, the police were able to confirm the existence of Mr. Clark's "secret" apartment in Madison when the apartment manager provided the police with a copy of a lease for an apartment with Mr. Clark's name on it.[4]

---

[4] We note that searches by parole or probation agents may be made on the basis of information supplied by the police and the police may assist the parole or probation authorities, so long

Based on this information, the DOC concluded that it had "reasonable grounds" to believe that Mr. Clark was violating the conditions of his parole under sec. DOC 328.21(3). As noted above, Section DOC 328.21(3) authorizes the search of a "client's living quarters or property" if there are "reasonable grounds to believe that the quarters or property contain contraband." A search of the unreported apartment of Mr. Clark was therefore ordered by the DOC pursuant to DOC 328.21(3).[5] The purpose of the search, as the circuit court found, was both to verify whether Mr. Clark was living at the apartment and to ascertain whether he was hiding stolen property or contraband at the apartment. Mr. Clark, who had denied having such an apartment and who was still being held in the Columbia County jail, was not informed that the search had been authorized.

The search was conducted by four officers, one parole officer accompanied by three police officers. When the officers arrived at the apartment, they could hear someone inside. The person inside turned out to be Ms. West. The officers knocked repeatedly, but no one answered. The officers then obtained a key from the apartment manager. They were still unable to secure entry, however, because the door was deadbolted. Soon thereafter the officers noticed Ms. West in the window, signaled to her, and she then opened the door.

The officers entered the apartment, identified themselves, and announced that they were there to

as they do not become "police searches." *Griffin,* 131 Wis. 2d at 56–57, n.5, 63. This search has not been challenged on this basis.

[5] Approval was sought and obtained in conformity with sec. DOC 328.21(3).

conduct a search of Mr. Clark's apartment. At first Ms. West denied that this was Mr. Clark's apartment or that he had lived there. She also wanted to know if the officers had a warrant. The officers responded that they had evidence that Mr. Clark did live there and that they did not need a warrant to conduct a parole search against Mr. Clark. After the officers told Ms. West that they had a copy of Mr. Clark's lease for the apartment, Ms. West admitted that this was in fact Mr. Clark's apartment, but she claimed he had sublet it to her.

As the search progressed and the officers noticed more and more stolen property, Ms. West admitted that Mr. Clark had stayed there many times with her, sometimes up to a week at a time. She also claimed that many of the things in the apartment were his. The officers also found additional evidence that Mr. Clark had resided at the apartment, at least periodically, including mens clothing and mens toiletries.

The search covered the entire apartment, including one room which was locked with a padlock. The officers asked Ms. West if she had a key to the room. Initially she denied having a key, but she then produced a key which the officers used to open the door. The room contained many items which were later found to be stolen.

The officers spent several hours taking inventory of the items found in the apartment and writing down serial numbers. The officers found cameras, cellular phones, car phones, dozens of radar detectors, a computer, an electronic keyboard, sunglasses, clothing, and many other items, most all of which turned out to be stolen. The officers also found a stun gun and a kit to convert an M–16 rifle into a full automatic.

When the police left Mr. Clark's apartment after the search they warned Ms. West not to remove the items which they suspected were stolen. However, when the police returned with a search warrant eight days later, the apartment was empty. The police were able to contact Ms. West and she explained that she had left the apartment and had put the suspected stolen property in a storage locker. She agreed to take the police to the storage locker and had even made them a key. When they arrived at the storage location, Ms. West signed a "Consent to Search" form. The police then seized the stolen property in the storage locker. At least some of these items seized from the locker were subsequently used as evidence against Ms. West.

Ms. West acknowledges that the State has the basic authority to conduct warrantless and nonconsensual searches against parolees such as Mr. Clark, pursuant to sec. DOC 328.21. Although she reserves to herself the right to challenge the conduct of this specific search, it is undisputed that the general practice of probation (and parole) searches was clearly upheld by the United States Supreme Court in *Griffin,* 483 U.S. 868. It is Ms. West's basic contention, however, that what is allowed as to parolees is not allowed against nonparolees, and that a nonparolee should not be made to suffer the consequences of the parole search directed at the parolee.

■

Ms. West begins by observing that the Fourth Amendment protects "people, not places," *Katz v. United States,* 389 U.S. 347, 351, 88 S. Ct. 507 (1967). A parolee may be subjected to a somewhat diminished scope of Fourth Amendment protections, but a nonparolee retains the full range of Fourth Amendment protections. *See, Griffin,* 483 U.S. at 875; *Tarrell,*

81

74 Wis. 2d at 653–655. So far, we agree. However, it is Ms. West's conclusion that this means that a parole search is (or should be) *per se* invalid for all purposes as against a nonparolee. Since there is no precedent for this conclusion, Ms. West asks this court to adopt a new rule: either (1) a parole search should not be allowed over the objection of a nonparolee occupying the premises; or, (2) if the parole search is allowed to proceed, the results of the parole search should not be available for use against the nonconsenting nonparolee.

The first of these suggestions may be rejected outright. Were a nonparolee living with a parolee allowed an automatic objection to a parole search directed against the parolee, it would effectively thwart all parole searches. In the words of the Supreme Court of Utah, this would allow a parolee to "avoid all warrantless parole searches by living with a nonparolee and asserting the nonparolee's constitutional rights." *State v. Johnson,* 748 P.2d 1069, 1073 (Utah 1987) (cited in *West,* 179 Wis. 2d at 194). *See also, Russi v. Superior Court of Napa County,* 33 Cal. App. 3d 160, 168–169, 108 Cal. Rptr. 716, 720–721 (1973) (cited in *West,* 179 Wis. 2d at 189). Our court of appeals likewise warned that, "[t]o accord [Ms. West] that expectation . . . would emasculate the special needs of Wisconsin's probation and parole system." *West,* 179 Wis. 2d at 194. Finally, we find it significant that neither Judge Dykman, dissenting in the court of appeals, nor the ACLU of Wisconsin, writing in support of Ms. West, argues that a nonparolee could prevent the authorities from conducting a warrantless and nonconsensual search as against the parolee.[6]

---

[6] Judge Dykman states that *"Griffin* [483 U.S. 868] holds that parolees and probationers have limited fourth amendment

A second proposal suggested by Ms. West is found in Judge Dykman's dissent in the court of appeals. Judge Dykman acknowledged that the evidence found in a parole search may be used against the parolee, but he then expressed the view that such evidence should not be used against the nonparolee occupying the premises. The ACLU of Wisconsin made a similar argument urging this court to hold that "the evidence seized without a warrant is inadmissible against the person who is not on supervision."

We decline the invitation to formulate such a rule. It is already clear that a parole search cannot be targeted against a nonparolee.[7] Were it shown that the police were really after Ms. West all along and had simply concocted the parole search so as to get at Ms. West while evading the normal warrant requirement, we would have a much different case. *See, e.g., United States v. Coleman,* — F.3d —, 1994 WL 124017 (7th Cir. 1994); *United States v. Richardson,* 849 F.2d 439, 441 (9th Cir. 1988); *State v. Flakes,* 140 Wis. 2d 411,

---

rights. A search of a parolee's residence pursuant to Department of Corrections rules is valid, whether the parolee lives alone or with someone. Evidence obtained as a result of that search is admissible against the parolee. A parolee cannot avoid warrantless searches by living with a nonparolee." *West,* 179 Wis. 2d at 197–198 (Dykman dissenting). Likewise, the ACLU of Wisconsin states as amicus that, "the unsupervised person has already surrendered some privacy by living with the person under supervision. One is the right to withhold consent for a search of the shared premises; the other is the risk of a prosecution based on admissible sources of information cultivated after incriminating evidence is found."

[7] As the United States Supreme Court stated in *Griffin,* 483 U.S. at 875, "[s]upervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large."

426–427, 410 N.W.2d 614 (Ct. App. 1987). That, however, is not what occurred here. This was no "police search." *Griffin,* 131 Wis. 2d at 56–57. Mr. Clark was clearly and legitimately the target of the parole search. There were reasonable grounds for the search against Mr. Clark as required under DOC 328.21 and the Fourth Amendment. *See, Griffin,* 483 U.S. at 873.[8]

■

· We also note that were such a rule adopted, parole searches could be foiled easily. Were it so that evidence obtained during a parole search could not be used against a nonparolee, there would be nothing to prevent the nonparolee from admitting possession, but yet still moving successfully under this proposed rule to have the items excluded at trial. That, fortunately, is not the law. Accordingly, we conclude that if the parole search itself is valid, there is no reason why the evidence discovered during that valid search cannot be used against a third party.

Ms. West's next argument is that this specific parole search was invalid because the proper procedures were not followed, and that, therefore, the

---

[8] In dissent, Justice Abrahamson (citing Judge Dykman's dissent in the court of appeals), states that, " '[i]f the police have probable cause to believe that a person has contraband or stolen items in his or her home, there is no reason why the police cannot obtain a warrant to search that person's home.' " *Dissenting op.,* p. at 101. We agree that a search directed at a nonparolee would be subject to the normal warrant requirement. However, it is incorrect to imply that the search in this case directed at Ms. West. Ms. West's argument is that the evidence obtained in a parole search should not be used against a nonparolee. She does not claim that the search was directed at her; nor is there any evidence in the record to suggest that it was.

evidence should be excluded. Traditionally "the defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* [or *her*] legitimate expectation of privacy rather than that of a third party." *United States v. Payner,* 447 U.S. 727, 731 (1980); *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S. Ct. 421 (1978); *Combs v. United States,* 408 U.S. 224, 227, 92 S. Ct. 2284 (1972); *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S. Ct. 2120 (1968). In this case, however, Ms. West does claim that her legitimate or reasonable expectation of privacy was invaded. We note that Ms. West is correct when she argues that her reasonable expectation of privacy is linked to what may be permissibly accomplished as against the person with whom she shares the apartment. The question, however, is whether there were any violations of the parole search regulations and whether any such errors were of the type which would require or justify application of the exclusionary rule.

It is Ms. West's burden to show that any violations occurred and that they were of such a type or quality that her constitutional rights were infringed. *See, Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S. Ct. 2556 (1980); *State v. Rewolinski,* 159 Wis. 2d 1, 13–16, 464 N.W.2d 401 (1990); *State v. Whitrock,* 161 Wis. 2d 960, 972, 468 N.W.2d 696 (1991).[9]

---

[9] The court of appeals declined to address Ms. West's bare allegation that the notice provision of the regulations, sec. DOC 328.21(5) was not followed because, the court noted, "West does not cite to any point in the record which establishes Clark was not given this notice." *West,* 179 Wis. 2d at 195. The court of appeals cites sec. (Rule) 809.19(1)(e), Stats., which requires that the appellant's brief cite those parts of the record relied on to support the appellant's arguments. *Id.* The court of appeals

The circuit court in this case found that the procedures in the administrative code were complied with and that the parole search satisfied the requirements of *Griffin.* 483 U.S. at 873. We find no reason to upset those findings.

However, even assuming, *arguendo,* that certain procedural requirements were not met, this would not automatically justify exclusion of the resulting evidence. *See, United States v. Calandra,* 414 U.S. 338, 347–348 (1974); *Whitrock,* 161 Wis. 2d at 981–983.[10] Not every requirement contained in the administrative regulations embodies a constitutional requirement. *Griffin,* 483 U.S. at 880, n.8; *see also, Calandra,* 414 U.S. at 347–348; *United States v. Caceres,* 440 U.S. 741, 749–753, 755 (1979). The warrantless search conducted in *Griffin* was allowed "because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Griffin,* at 873. The United States Supreme Court made clear, however, that this did not mean that precise compliance with all the administrative requirements was a *constitutional*

indicated properly that it "will not search the record to supply the facts necessary to support the appellant's argument, nor will [it] develop appellant's argument." *Id.* at 195–196. This action was within the court's discretion. We, however, have searched the record and we conclude, as explained below, both that notice is not mandatory, and that Mr. Clark was effectively informed when the parole officer asked him about the apartment, but Mr. Clark denied that any such apartment existed.

[10] "Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra,* 414 U.S. at 348.

necessity. As here, there were allegations in *Griffin* that the warrantless search in that case did not comport with all the governing administrative regulations. *Id.* at 887 (Blackmun, J., dissenting). The majority made it clear, however, that the violation of an administrative regulation pertaining to probationary searches does not automatically give rise to a Fourth Amendment violation, so long as the requirement to find "reasonable cause" was met.[11] Since there is no disputing that the officers had "reasonable cause" to inspect Mr. Clark's apartment, the constitutional requirements have been met.

Nor do we find any state law violations. Ms. West's primary complaint is that Mr. Clark was not notified of the impending search, as specified in Wis. Admin. Code, sec. DOC 328.21(5) (April 1990). Section DOC 328.21(5) states:

> (5) INFORMING THE CLIENT. Whenever *feasible* before a search is conducted under this section, the client shall be informed that a search is about to occur, why and how the search will be conducted and the place where the search is to occur. (Emphasis added.)

■

We conclude that this requirement is directory, not mandatory. The word "feasible" indicates that the DOC is allowed some discretion in whether, when, or how it

---

[11] The Court noted that, "the only regulation upon which we rely for our constitutional decision is that which permits a warrantless search on 'reasonable grounds.' . . . That the procedures followed, although establishing 'reasonable grounds' under Wisconsin law, and adequate under federal constitutional standards, may have violated Wisconsin state regulations, is irrelevant to the case before us." *Griffin,* 483 U.S. at 880, n.8.

discloses its intention to search a given parolee's residence. We note that the DOC did confront Mr. Clark when it suspected that he had an apartment in Madison. Mr. Clark was thereby alerted that his Madison apartment had come under the DOC's scrutiny. However, instead of acknowledging the apartment as required, Mr. Clark continued to deny that he had any apartment in Madison. Under these circumstances, we find no particular reason why the DOC would have to inform Mr. Clark of its precise plans to investigate an apartment Mr. Clark denied having. We also note that one of the traditional and primary reasons for providing notice when "feasible" is to minimize the chance of confrontation. *See, e.g., State v. Stevens,* 181 Wis. 2d 410, 427, 511 N.W.2d 591 (1994). Since Mr. Clark was incarcerated at the time, this reason to consider giving notice was not present. Accordingly, we conclude that the parole search against Mr. Clark, at least for the purposes of Ms. West's case, was valid.[12]

Having established on the record before us in this case that the parole search was properly executed as against Mr. Clark, we consider whether the search was valid as to Ms. West. We conclude that it was, but we emphasize that our analysis is different from that of the circuit court and the court of appeals.[13]

---

[12] No conclusions made in the present case preclude Mr. Clark from raising such issues in his own defense. Mr. Clark is still free to challenge the validity of the search or the use of the evidence against him should he have a basis to do so.

[13] "In reviewing a denial of a suppression motion, we will uphold the trial court's finding of fact unless they are against the great weight and clear preponderance of the evidence. Whether these facts satisfy the constitutional requirement of reasonableness presents a question of law, and we are not

The circuit court properly denied Ms. West's motion to suppress the evidence found during the search of Mr. Clark's apartment. However, the circuit court was not correct to phrase its decision in terms of "standing." As the court of appeals observed, the question of standing is now analyzed in terms of reasonable or legitimate expectation of privacy. *West,* 179 Wis. 2d at 190 (citing *Rakas,* 439 U.S. at 139–140); *see also, State v. Dixon,* 177 Wis. 2d 461, 467, 501 N.W.2d 442 (1993).

The pertinent question, then, is whether Ms. West demonstrated a reasonable expectation of privacy in the apartment. Again, the burden is upon the one claiming Fourth Amendment protection to show that the search was illegal and that the person had a reasonable or legitimate expectation of privacy in the premises or property. *See, Rawlings,* 448 U.S. at 104; *Rewolinski,* 159 Wis. 2d at 13–16; *Whitrock,* 161 Wis. 2d at 972.

The test for whether a person has a reasonable or legitimate expectation of privacy in the item or area searched depends on (1) whether the individual has exhibited an actual (subjective) expectation of privacy in the area searched and in the item seized, and (2) whether such an expectation of privacy is legitimate or justifiable in that it is one that society is willing to recognize as reasonable. *Dixon,* 177 Wis. 2d at 468. Whether the facts support the defendant's claim of a reasonable expectation privacy in the space or area which was the subject of the search is a question of

bound by the lower courts' decisions on that issue." *Whitrock,* 161 Wis. 2d at 973.

constitutional law which we review independently of the circuit court and court of appeals. *State v. Guzman,* 166 Wis. 2d 577, 586, 480 N.W.2d 446 (1992); *Griffin,* 131 Wis. 2d at 49; *Dixon,* 177 Wis. 2d at 466–467. However, the findings of fact made by the circuit court will not be set aside unless they are clearly erroneous. *Id.; State v. Wisumierski,* 106 Wis. 2d 722, 734, 317 N.W.2d 484 (1982).

There are several factors which are relevant in determining whether an accused has an expectation of privacy that society is willing to recognize as reasonable. These include whether one has a property interest in the premises, whether one was legitimately on the premises, whether one has complete dominion and control and the right to exclude others, whether one took precautions those seeking privacy take, whether one put the property to some private use, and whether the privacy claim is consistent with historical notions of privacy. *State v. Fillyaw,* 104 Wis. 2d 700, 711–712 n.6, 312 N.W.2d 795 (1981); *Dixon,* 177 Wis. 2d at 469.

The court of appeals concluded that Ms. West had no reasonable expectation of privacy. *West,* 179 Wis. 2d at 190–191. Although Ms. West had exhibited a subjective expectation of privacy, the court of appeals concluded that this was not an expectation which society is prepared to recognize as reasonable. The reason the court of appeals gave for concluding that her expectation of privacy was not reasonable was that Ms. West knew that the apartment was leased by Mr. Clark and that she knew he was a parolee. We disagree.

We conclude that Ms. West did in fact demonstrate a basis for a reasonable expectation of privacy in the

apartment. We find it very important, especially in terms of demonstrating the reasonableness of the state's actions, that this apartment was leased to Mr. Clark and that he stayed there enough for the circuit court to consider it his apartment. However, the Fourth Amendment protections do not "shield only those who have title to the searched premises." *Mancusi,* 392 U.S. at 367.[14] As the United States Supreme Court held in *Rakas,* 439 U.S. at 143, "the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." The court of appeals concluded that she "shared" the apartment with Mr. Clark. *West,* Wis. 2d at 184. This fact alone would establish a basis for a reasonable expectation of privacy. In *Minnesota v. Olson,* 495 U.S. 91, 99–100, 110 S. Ct. 1684 (1990), a reasonable expectation of privacy was recognized even as to overnight guests. Ms. West clearly satisfies several of the factors listed in *Fillyaw,* 104 Wis. 2d at 711–712.

We also question the court of appeals' reliance upon the fact that Ms. West knew of Mr. Clark's status as a parolee. The court of appeals emphasized that, "because she knew of Clark's parolee status, [Ms. West] did not have a legitimate expectation of privacy in the living quarters she shared with Clark." *West,* 179 Wis. 2d at 194. We disagree. Emphasizing Ms. West's knowledge of Mr. Clark's status as a parolee begs the question of why or how this fact should change Ms. West's expectation of privacy. It would first have to be established that the parolee's status carried objective consequences to nonparolees, but if these were objec-

---

[14] Property interests, while not dispositive, remain a very relevant factor. *Rewolinski,* 159 Wis. 2d at 18.

tive consequences, subjective knowledge would be irrelevant. Besides, were the standard geared to actual knowledge, the parole supervision system could be frustrated by the mere assertion that the nonparolee did not know for sure that the person in question was a parolee.

■■■

At the same time, however, we conclude that Ms. West's reasonable expectation of privacy in the apartment was limited because she was occupying the premises jointly with Mr. Clark. The facts of this case clearly demonstrate that both parties shared the apartment and had common authority over the apartment and its contents.[15] The apartment was leased by Mr. Clark, but Ms. West had a key and was clearly occupying the place at the time of the search. By her own admission, Ms. West confirmed that Mr. Clark had stayed with her there many times over the couple of months the apartment had been leased. She also contends that many of the items in the apartment (presumably the dozens of stolen items) were Mr. Clark's, and that he had access to them.[16]

---

[15] The government has the burden of proving common authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793 (1990). The standard is reasonableness. *Id.* at 185–186.

[16] The same conclusion applies to the locked room. It is true that the police obtained a key to the room from Ms. West, but there is no evidence to suggest that Ms. West had separate or exclusive control of the locked room. To the contrary, it is her contention that all but a couple incidental items found in the room belonged to Mr. Clark and that she did not know how the items got there. There is no evidence that the room was used in any capacity other than storage of the stolen items.

As a consequence, Ms. West's reasonable expectation of privacy was correspondingly limited. It is well-established that one who shares common authority over premises or effects with another has "assumed the risk" that the other may allow outsiders to come onto the premises or to examine the property. *See, United States v. Matlock,* 415 U.S. 164, 171, n.7, 94 S. Ct. 988 (1974); *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S. Ct. 1420 (1969); *State v. McGovern,* 77 Wis. 2d 203, 211–212, 252 N.W.2d 365 (1977). It follows that one who possesses common authority over premises or effects with another may give valid consent to the authorities to search those premises or effects, even though the other person does not consent. *Matlock,* 415 U.S. at 170. As the United States Supreme Court explained in *Matlock,* at 171, "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought or inspected." *See also, Frazier,* 394 U.S. at 740.[17]

---

[17] We note that on these facts it is irrelevant whether the alleged sublet arrangement was ever registered or not. Just as a reasonable expectation of privacy is not dependent upon strict notions of property interests, neither is the finding of common authority. The United States Supreme Court noted in *Matlock,* 415 U.S. at 171, n.7, "[c]ommon authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements (citations omitted), but rests rather on mutual use of the property by persons generally having joint

A parole search under sec. DOC 328.21(3) has been permitted as an exception to the warrant requirement. *Griffin,* 483 U.S. at 873. Subjecting oneself to the possibility of a parole search derives from the conditions placed upon parolees. *Id.* at 870–871. We note, as did the United States Supreme Court in *Griffin,* 483 U.S. at 871, that sec. DOC 328.04(3)(k) makes it a violation of the terms of parole for the parolee to refuse to consent to a search of his or her residence or property under his or her control. We conclude that, for the present purposes, the nature of the conditions of parole upon the parolee make this situation analogous to consent by the parolee. Therefore, in analyzing the impact of searches conducted under sec. DOC 328.21 on third parties, we will treat the parole search as if it were the equivalent of actual and present consent by the parolee to the search. As such, the parole search may extend to all parts of the premises to which the probationer or parolee has common authority, just as if it were a consent search. *See,* W.R. LaFave, SEARCH AND SEIZURE § 10.10, at 23 n.70.1 (2nd ed. 1994 Supp.);

---

access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his [or her] own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Thus even if Ms. West had succeeded in proving that the alleged sublet arrangement were real, the fact that Mr. Clark still shared the apartment with her was sufficient to establish common authority and therefore means that we will treat the apartment as jointly occupied by the two for purposes of the Fourth Amendment.

*United States v. Davis,* 932 F.2d 752, 758–760 (9th Cir. 1991).[18]

The court of appeals noted that "[i]t may be that the person whose liberty is not conditionally restricted will have so separated his or her living quarters or personal property that they cannot be considered the 'client's living quarters or property' under Wis. Admin. Code sec. DOC 238.21(1)." *West,* 179 Wis. 2d at 195. *See also, Mancusi,* 392 U.S. at 370. We agree. In this case, however, all indications are that they had common authority.

We conclude further that a parole search may be conducted over the explicit objections of those living with the parolee. *See, Davis,* 932 F.2d at 758–760;

[18] The dissent is incorrect when it suggests that we have somehow based this search on Ms. West's "consent." Dissenting op., p. at 100. We have stated explicitly that Ms. West's consent was neither sought nor required. We have attributed a form of constructive consent to the parolee within the context of the "special needs" of the parole and probation system, pursuant to *Griffin,* at 873–874. The dissent, citing Judge Dykman's dissent, Dissenting op., p. at 101, has acknowledged that the search could be conducted as against the parolee without a warrant " 'whether the parolee lives alone or with someone.. ..,' " i.e., presumably the nonparolee could not prevent the search as against the parolee. However, the dissent would exclude that evidence obtained against nonparolees, even though they might share the premises with the parolee and exert common authority over the premises. This is not the law. The loss of Ms. West's reasonable expectation of privacy does not derive from "transformed" consent, and is not dependent upon the parolee's status, but rather her expectation of privacy is diminished because the search was conducted in an area which she held in common authority with the person against whom the search was lawfully sought.

*United States v. Bethea,* 598 F.2d 331, 335 (4th Cir. 1979); *United States v. Canada,* 527 F.2d 1374, 1379 (9th Cir. 1975). This follows from the fact that the permission to conduct parole searches is treated as if the parolee had given actual and present consent.

Therefore, the fact that Ms. West's consent was neither sought nor given does not affect the validity of the search. So long as the authorities have reasonable cause for the search and a reasonable basis for believing that the premises or items searched belong to or are used in common by the parolee, there is no violation of the Fourth Amendment either against the parolee or against the nonparolee. If it be shown that the authorities lacked reasonable cause or were unreasonable in their assumptions or actions, the remedy could be found in applying the exclusionary rule at that point.[19] There is no basis for a *per se* rule preventing the use of incriminating evidence found during a parole search from being used against a nonparolee who shared the premises.

---

[19] The propriety of police actions in search and seizure is governed by the standard of reasonableness in light of the facts and the circumstances. *Whitrock,* 161 Wis. 2d at 981. In *Rodriguez,* 497 U.S. at 185–186, the United States Supreme Court explained the standard as follows: "[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable."

Ms. West seriously misconstrues the issue when she claims that her Fourth Amendment protections were jeopardized merely because she "associated" with a parolee, or that our present holding would reduce the Fourth Amendment protections of "those who might merely associate themselves with probationers or parolees." That is not what has occurred here. We emphasize that Ms. West's reasonable expectation of privacy was compromised not because she was sharing the apartment with a parolee, but rather because she was sharing the apartment with another person. The only way her situation was affected by Mr. Clark's parolee status was in the manner in which her joint occupant caused authorization to be granted to third parties for a search of his premises and those in which he shared common authority. Had she merely "associated," and not shared premises, with a parolee, neither her premises nor her belongings would have been subjected to the search.[20]

The purpose of suppression is to prevent future misconduct on the part of the police by not allowing into evidence items seized unlawfully. Here the actions

[20] The dissent is likewise mistaken when it suggests, again citing Judge Dykman's dissent in the court of appeals, that " 'parents, grandparents, siblings, roommates and spouses of persons convicted of any of these crimes . . . have forfeited their fourth amendment rights if they continue living with their children, grandchildren, siblings, roommates or spouses . . .' " Dissenting op., p. at 101. We are simply applying the rule that whenever one shares common authority over premises or effects with another, that person has "assumed the risk" that the other person may allow outsiders to come onto the premises to search or to examine the property. *See, Matlock,* 415 U.S. at 171, n.7; *Frazier,* 394 U.S. at 740; *McGovern,* 77 Wis. 2d at 211–212.

of the police were proper, therefore there is no reason to suppress the evidence as to Ms. West. *See, Calandra,* 414 U.S. at 347–348.

The final issue concerns the seizure of the items at the storage locker rented by Ms. West. The circuit court made no express finding as to the voluntariness of West's consent to the storage locker search. Therefore we make our own independent determination on that issue based upon the evidence in the record. *See, State v. Kraimer,* 99 Wis. 2d 306, 318, 298 N.W.2d 568 (1980); *State v. Turner,* 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987). We conclude from the "totality of circumstances" that Ms. West's consent to the search of the storage locker was voluntary. *See, Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973).

The police obtained a search warrant for Mr. Clark's apartment eight days after the parole search. The validity of that warrant has not been challenged. When the police arrived at the apartment and found it empty, they contacted Ms. West. She voluntarily told the police that she had moved the property to a storage locker. She voluntarily accompanied the police to the storage locker, voluntarily gave them a key she previously had had made for them, and voluntarily gave them a type-written inventory of the items she had taken from the apartment but had not placed in the storage locker. She also voluntarily signed a "Consent to Search" form. The search and seizure was conducted without incident.

The state had argued, in the alternative, that this subsequent voluntary consent would have "dissipated any taint" which may have existed had the original parole search been found invalid. Since we find both the parole search and the subsequent voluntary con-

sent by Ms. West to the storage locker search valid, it is not necessary to discuss this second issue further.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The United States Supreme Court decision, *Griffin v. Wisconsin*, 483 U.S. 868 (1987),[1] authorizing the warrantless searches of parolees and probationers residences in the absence of exigent circumstances, has been the target of significant criticism.[2] It is therefore unwise to extend the *Griffin* analysis further, as the majority opinion does, to a person living with a parolee or probationer.

The majority opinion insists that defendant West had a reasonable expectation of privacy in the apartment even though she shared it with a parolee. Majority opinion at 90–91. Having conferred an expec-

---

[1] The Court upheld the Department of Corrections' rules permitting a search of a probationer's residence on reasonable suspicion without a warrant or probable cause. *Griffin*, 483 U.S. at 872–873.

[2] *See, e.g.,* 4 W. LaFave, Search and Seizure sec. 10.10, at 24 (2d ed. 1993 Supp.) (finds unconvincing the *Griffin* majority's reasoning that "the special needs of Wisconsin's probation system make the warrant requirement impracticable"); Sunny A.M. Koshy, *The Right of [All] People to be Secure: Extending Fundamental Fourth Amendment Rights to Probationers and Parolees,* 39 Hastings L.J. 449, 481 (1988); Howard P. Schneiderman, *Conflicting Perspectives from the Bench and the Field on Probationer Home Searches—Griffin v. Wisconsin Reconsidered,* 1989 Wis. L. Rev. 607, 664 (". . . a warrant requirement imposed for non-emergency searches would not unduly burden Wisconsin probation departments because agents reported that they need to utilize their search powers rather infrequently").

tation of privacy on her, the majority in the next breath takes it away, arguing that her parolee roommate had "consented" to warrantless searches by the authorities. Majority opinion at 94. According to the majority opinion, West's loss of her privacy rests on "consent" three times removed. The majority takes the fact that a parolee's non-consent to a home search under DOC 328.04(3)(k) (which is not involved in this case) would result in a parole violation and transforms it into the parolee's consent to this warrantless search.[3] Then the majority transforms "the parolee's consent" into defendant West's "consent," noting that because she shared the apartment, a warrantless search on less than probable cause was justified.

I agree with the dissent filed by Judge Dykman in the court of appeals. *State v. West,* 179 Wis. 2d 182, 197, 507 N.W.2d 343 (1993). As Judge Dykman explained, the majority opinion sets up a straw man and then tears it down. I quote salient parts of Judge Dykman's dissent and adopt the dissent as my own.

> "[W]e can simultaneously follow *Griffin,* deny probationers and parolees full fourth amendment protection and yet grant that protection to other citizens. . . .
>
> ". . .. A search of a parolee's residence pursuant to Department of Corrections rules is valid,

[3] A search under DOC 328.04(3)(k), majority opinion at 94, is not involved in this case. The search in this case was under DOC 328.21(3). *See* majority opinion at 76.

Despite the majority's citation of *Griffin* for this "consent" proposition, *Griffin* says nothing about "consent" to the search involved in this case. The *Griffin* opinion focuses on DOC 328.21 (3) and upholds the rule, concluding that it meets the "special needs" of the probation officers and comports with the principles of reasonableness underlying the Fourth Amendment.

whether the parolee lives alone or with someone. . . . A parolee cannot avoid warrantless searches by living with a nonparolee. The fears of the majority . . . are groundless.

"The search of the apartment did not produce evidence which incriminated [the parolee]. This case is not a review of . . . parole revocation, nor is it a review of the charges brought against [the parolee]. . . .

". . .. The proper analysis is not difficult. Three police officers and a probation and parole agent searched West's residence without a warrant, without exigent circumstances and without West's permission. This is exactly the type of search prohibited by the fourth amendment. The result is that the evidence seized in the search must be suppressed insofar as the state seeks to use it against West.

". . .. The majority has concluded that the parents, grandparents, siblings, roommates and spouses of persons convicted of any of these crimes [including fish and game law violations, drinking intoxicants while on a common carrier possession of marijuana] have forfeited their fourth amendment rights if they continue living with their children, grandchildren, siblings, roommates or spouses. . . .

"If the police have probable cause to believe that a person has contraband or stolen items in his or her home, there is no reason why the police cannot obtain a warrant to search that person's home. That the occupant lives with a probationer or parolee is no reason to invent an exception to the fourth amendment. . . ."

For the reasons set forth, I dissent.