STATE of Wisconsin, Plaintiff-Respondent, †

v.

John M. KIEFFER, Defendant-Appellant.

Court of Appeals

*No. 96–0008–CR. Submitted on briefs October 15, 1996.—Decided December 11, 1996.*

(Also reported in 558 N.W.2d 664.)

†Petition to review granted.

462

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John A. Birdsall* of *Gonzalez, Saggio, Birdsall & Harlan, S.C.* of Milwaukee.

■

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J. John M. Kieffer (Kieffer) appeals from a judgment of conviction for delivery of psilocybin mushrooms in violation of § 161.41(1)(g)1, STATS. Kieffer contends that the trial court erred when it denied his motion to suppress the physical evidence obtained during a warrantless search and further claims that a statement made while in police custody and after he had received *Miranda*[1] warnings should be suppressed as it was tainted by earlier questioning. We affirm the trial court's decision to admit Kieffer's post-*Miranda* statement. However, we hold that the warrantless search of Kieffer's living quarters was in violation of his Fourth Amendment protections, and therefore, the physical evidence obtained through that search should be suppressed.

The Whitewater police received information that an individual, John Zattera, was in possession of psilocybin mushrooms. The police were also given an address, identified as the Garlock residence, where Zattera was staying. Officer Scott Priebe was accompanied by two other officers when they went to the address in search of Zattera. When they arrived, they initially spoke to Robert Garlock, who identified himself as the owner of the property. Garlock told the officers that his daughter and son-in-law, Dawn and John Kieffer, lived in a converted loft above Garlock's garage and that Zattera was staying with them.

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

The three officers asked Garlock whether the Kieffers paid rent. Garlock replied that Dawn and Kieffer sometimes helped pay the utilities but that there was no lease agreement. Garlock then led the officers to the garage located approximately fifteen to twenty feet from the house. He opened the outside garage door and yelled to Dawn and Kieffer that the police were there and wanted to talk to them. The three officers and Garlock then climbed up interior stairs to the Kieffers' living quarters. At the top of the stairs was a door with a lock; it was unlocked at the time. Garlock and the officers entered.

Once inside the loft, they found Zattera sleeping on the couch. Dawn and Kieffer came out of the bedroom. Dawn asked for a search warrant, but one of the officers told her that they did not need one as Garlock had consented to the search of the loft.

The officers questioned both Zattera and Kieffer. Kieffer initially denied knowing anything about the mushrooms. After this initial questioning, Kieffer went back into the bedroom and Priebe followed him. While in the bedroom, Priebe conducted a search and found a baggy full of psilocybin mushrooms. Kieffer admitted having purchased the mushrooms from Zattera.

After finding the mushrooms, but without giving Kieffer *Miranda* warnings, the officers continued to question him about his involvement with the drugs. Kieffer made several incriminating statements. The officers then arrested Kieffer and transported him to the Whitewater police station. At the police station, an officer read Kieffer his *Miranda* rights and interrogated him. Following that questioning, Kieffer was charged with one count of possession of psilocybin mushrooms in violation of § 161.41(1)(g)1, STATS.

Kieffer filed motions to suppress the physical evidence obtained in the search and to suppress his statements made during the interrogations at both the loft and the police station. The trial court denied Kieffer's motion to suppress the physical evidence and the motion to suppress his post-*Miranda* statement taken at the police station. The court granted Kieffer's motion to suppress the statement made at the loft. Kieffer pled guilty to one count of possession of psilocybin mushrooms. He now appeals, claiming that the trial court erred in failing to suppress the results of the warrantless search and his post-*Miranda* statement.

Kieffer first contends that the police engaged in an illegal search in violation of the Fourth Amendment of the United States Constitution and art. I of the Wisconsin Constitution. More specifically, Kieffer argues that Garlock did not possess valid third-party authority to consent to a warrantless search of the Kieffer loft. This raises an issue of constitutional law and appellate courts decide issues of law without deference to the lower courts. *See State v. Arroyo*, 166 Wis. 2d 74, 79, 479 N.W.2d 549, 551 (Ct. App. 1991).

A warrantless search is "per se" unreasonable with few exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). However, third parties may consent to a search as long as they have common authority. *United States v. Matlock*, 415 U.S. 164, 171 (1974). "[A]uthority to consent to search does not depend on legal property rights, but rather on the relationship in fact of the consenting party to the searched premises." *Kelly v. State*, 75 Wis. 2d 303, 315, 249 N.W.2d 800, 806 (1977). However, even if a court determines that a search was in violation of Fourth Amendment protections but the

police have a reasonable belief that the person who consented is a resident of the premises, the search may be upheld. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

■■■

There is a long history of common authority consent cases in both federal and state courts. Common authority generally rests "on mutual use of the property by persons having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n.7. Factors in determining common authority include the relationship of the consenting party to the searched premises. *Kelly*, 75 Wis. 2d at 315, 249 N.W.2d at 806. However, the rule does not extend common authority to a "nonresident of the premises, merely by virtue of being a relative of the property owner." *See id.* at 316, 249 N.W.2d at 807. The burden of establishing common authority rests with the prosecution. *Rodriguez*, 497 U.S. at 181.

The issue to be resolved is whether Garlock could give consent to the search of the loft. If he could not, we must still consider whether the police possessed a reasonable belief that Garlock had common authority to consent. *See id.* at 188-89. We begin with the issue of Garlock's authority to consent.

Kieffer testified that he had converted unused storage space above the garage into living quarters. The Kieffers and Garlock all testified that in exchange for their occupancy of the loft, the Kieffers were responsible for a portion of the utility payments. Garlock testified that he never went into the loft

without the Kieffers' permission. The door to the loft had a lock; only Dawn and Kieffer had keys to that lock. Garlock did not occupy or otherwise use the loft space. Considering all of this evidence, we conclude that under *Matlock* and its progeny, Garlock lacked the common authority necessary to give third-party consent.

We must then consider whether the police could rely on a reasonable belief that they had a valid consent to search. If so, the evidence obtained should not be suppressed. The issue is not whether police officers conducting "a search or seizure under one of the exceptions to the warrant requirement . . . [are] correct, but that they always [are] reasonable." *Rodriguez*, 497 U.S. at 185. The Constitution is not violated when officers enter "without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises." *Id.* at 186. However, even when the consent is accompanied by an *explicit assertion that the individual lives there*, the circumstances could be such that a reasonable person would not act upon the invitation to enter without further inquiry. *See id.* at 188.

In the instant case, the only inquiry the police made was whether the Kieffers paid rent. They asked no further questions regarding Garlock's authority to consent to a search of the loft. They made no further inquiries into the use of the loft by the Kieffers or whether Garlock ever went into the loft without the Kieffers' permission. The State cannot rely on the posing of a single question about rent payments to support a finding of reasonableness. To do so would be

to let the reasonableness exception overtake the rule of common authority. *Cf. id.*

Nonetheless, even if we were to conclude that the officers' belief that Garlock possessed common authority to consent to the search was reasonable, Dawn's request for a search warrant negates any third-party consent. "[C]onsent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock*, 415 U.S. at 170. However, if two persons have equal rights in the premises and both are present at the time of the search, any evidence obtained is inadmissible against a nonconsenting party. *United States v. Robinson*, 479 F.2d 300, 303 (7th Cir. 1973).

Therefore, even if we were to conclude that the officers' reliance on Garlock's consent was reasonable, his consent was overcome by Dawn's request for a search warrant. *See id.* We conclude that the evidence seized is suppressible on several bases: because Garlock did not possess common authority such that he could consent; because the officers could not reasonably rely on a single question about rent payments to establish their belief in Garlock's common authority; and because Dawn's request for a search warrant negated any prior consent. Under any of these rationales, the warrantless search was unreasonable and in violation of Kieffer's Fourth Amendment protections.

The State relies on *State v. West*, 185 Wis. 2d 68, 517 N.W.2d 482 (1994), to bolster its argument that Garlock's consent was valid. In *West*, police and a parole officer went to a parolee's apartment in search of

471

stolen contraband. The police stated that they were there to conduct a parole search of the apartment. The apartment was occupied by a woman, West, who did not consent to the search of the apartment but was arrested on the basis of evidence found during the search. West attempted to suppress the evidence as illegally obtained because of the lack of a search warrant. The supreme court rejected this argument and relied on administrative rules in upholding the search. *Id.* at 86-87, 517 N.W.2d at 488-89. We reject any reliance on *West* in the instant case. Kieffer is not on parole, nor was the search conducted by a parole/probation officer. There were no administrative rules to justify the search. The State cannot rely on *West* to provide justification for the search of the loft.

Kieffer next contends that the trial court erred by denying his motion to suppress his postarrest police station statement because it was involuntary.[2] First, he maintains that his statement made at the police station was tainted by the failure of the officers to advise him of his *Miranda* rights earlier at the loft. In his original loft statement, obtained after the officers discovered the mushrooms, Kieffer admitted that the mushrooms were his and that he had purchased them from Zattera. Kieffer also contends that the later statement was impermissibly influenced by certain promises made to him by the interrogating officers.

The ultimate issue of voluntariness is "an issue of law, and the appellate court must make an independent determination." *United States v. Kreczmer*, 636 F.2d 108, 110 (5th Cir. 1981). Applying

---

[2] The trial court suppressed all of Kieffer's loft statement made prior to any *Miranda* warnings and the State does not appeal from that determination.

constitutional issues to the facts of a case requires complete review by an appellate court without deference to the lower court. *See Farrell v. John Deere Co.*, 151 Wis. 2d 45, 62, 443 N.W.2d 50, 55 (Ct. App. 1989). Statements made by a suspect while in custody and while under interrogation are inadmissible if the police failed to properly advise the suspect of his or her rights. *See Miranda*, 384 U.S. at 478.

However, the United States Supreme Court has refused to extend the *Miranda* rule to hold that "a simple failure to administer the warnings . . . so taints the investigatory process that a subsequent voluntary and informed waiver [of rights] is ineffective for some indeterminate period." *Oregon v. Elstad*, 470 U.S. 298, 309 (1985). Although an initial failure by police to administer the warnings may bar earlier statements, later statements made by the suspect after the police advise him or her of the *Miranda* rights are not subject to the exclusionary clause. *See Elstad*, 470 U.S. at 309. The original statements made before the advisement of one's *Miranda* rights must be suppressed, but the "admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Elstad*, 470 U.S. at 309.

Absent deliberately coercive tactics in obtaining Kieffer's original loft statement, "[t]he mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Id.* at 314. Because the suppression hearing record does not support that Kieffer's pre-*Miranda* loft statement was coerced in any way, we conclude that the statement at the police station is admissible under the *Elstad* rule.

473

Kieffer also contends that his police station statement was the product of improper promises made by the officers to obtain his cooperation. He contends that one of the officers suggested that "if [Kieffer] gave him Zattera, nothing would happen." The officers testified that they made no promises to Kieffer. In response to an interrogating officer's question, Kieffer had denied during the interrogation that any promises were made to him and did not directly dispute that denial at the suppression hearing. In fact, at the suppression hearing Kieffer stated, "It wasn't—It wasn't a promise. [The officer] didn't say I promise this."

Whether the interrogating officers improperly promised Kieffer something in exchange for his statement is a question of fact that requires the trial court to weigh the credibility of the police officers and Kieffer. We will not reverse a trial court's findings of fact unless those findings are clearly erroneous. Section 805.17(2), STATS. We are satisfied that the trial court's findings of fact—that the police officers' testimony concerning the voluntariness of Kieffer's statement was more credible than Kieffer's understanding of his conversation with the officers—are not clearly erroneous. Accordingly, we affirm the trial court's admission of Kieffer's police station statement into evidence.

In sum, while we affirm the trial court's decision to admit Kieffer's police station statement into evidence, we are compelled to reverse the judgment based upon our conclusion that the warrantless search of Kieffer's loft cannot be supported by a third-party consent exception to his Fourth Amendment protections. We

remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.